# EXHIBIT #2

William P. Torngren (Cal. Bar No. 58493)
**LAW OFFICES OF WILLIAM P. TORNGREN**
117 J Street, Suite 300
Sacramento, California 95814
Telephone: (916)554-6447
Facsimile: (916)554-6445
Email: Torngren@TorngrenLaw.com

Scot D. Bernstein (Cal. Bar No. 94915)
**LAW OFFICES OF SCOT D. BERNSTEIN**
**A Professional Corporation**
101 Parkshore Drive, Suite 100
Folsom, California 95630
Telephone:  (916) 447-0100
Facsimile:  (916) 933-5533
Email: swampadero@sbernsteinlaw.com

Gail A. Glick (Cal. Bar No. 174293)
**ALEXANDER KRAKOW + GLICK LLP**
401 Wilshire Boulevard, Suite 1000
Santa Monica, California 90401
Telephone: (310) 394-0888
Facsimile: (310) 394-0811
Email: gglick@akgllp.com

Attorneys for Plaintiff

## SUPERIOR COURT
## SACRAMENTO COUNTY, CALIFORNIA
### (Unlimited Jurisdiction)

|  |  |
|---|---|
| CARL R. WRIGHT, on behalf of himself, all others similarly situated, and the general public, <br><br> Plaintiff, <br><br> v. <br><br> RBC CAPITAL MARKETS CORPORATION, et al., <br><br> Defendants. | Case No. 34-2009-00064221 <br><br> **NOTICE OF MOTION AND MOTION FOR DETERMINATION THAT DEFENDANTS CANNOT PURSUE ARBITRATION OF CLASS CLAIMS** <br><br> Date:  January 13, 2010 <br> Time:  2:00 p.m. <br> Dept:  53 <br> Before the Honorable Loren E. McMaster <br><br> Complaint filed: November 17, 2009 |

**TO DEFENDANTS AND THEIR ATTORNEYS:**

**PLEASE TAKE NOTICE** that on January 13, 2010, at 2:00 p.m., or as soon thereafter as the matter may be heard, in Department 53 of the Sacramento County Superior Court, 800 Ninth Street, Third Floor, Sacramento, California, plaintiff Carl R. Wright, on behalf of himself, all others similarly situated, and the general public, ("plaintiff") will ask, and hereby moves, the Court to make the following determinations and order:

1. The claims made by defendant RBC Wealth Management, A division of RBC Capital Markets Corporation, in FINRA Arbitration No. 09-04264 ("the Arbitration") are based upon the same facts and law and involve the same defendants as this putative class action.

2. The Arbitration shall be stayed in all respects pending further order of this Court.

3. Defendants and their assignees cannot enforce any arbitration agreement against plaintiff or any member of the putative class with respect to claims made in the putative class action, including attempts to enforce so-called "promissory notes," pending further order of this Court.

4. Defendants and their assignees shall notify each putative class member against whom they are enforcing or seeking to enforce an arbitration agreement with respect to claims made in this action, including attempts to enforce so-called "promissory notes," of the pendency of this putative class action and of this Court's order.

Plaintiff's motion will be based upon Rule 13204 of the Code of Arbitration Procedure promulgated by the Financial Industry Regulatory Authority, Inc. ("FINRA"), the pleadings contained in the Court's file, this Notice and Motion, the accompanying memorandum in support of the motion, the accompanying declaration of William P. Torngren, and any matter presented to the Court at oral argument.

Pursuant to Local Rule 3.04, the Court will make a tentative ruling on the merits of this matter by 2:00 p.m., the court day before the hearing. The tentative ruling shall become the final ruling of the Court unless a party advises all other parties and the Court of a request for oral argument. You may access and download the Court's ruling from the Court's website at

1    http://www.saccourt.com. If you do not have online access, you may obtain the tentative ruling over

2    the telephone by calling (916) 874-8142 and a deputy clerk will read the ruling to you. If you wish

3    to request oral argument, you must contact the courtroom clerk at (916) 874-7858 (Department 53)

4    or (916) 874-7848 (Department 54) and the opposing party before 4:00 p.m. the court day before the

5    hearing. If you do not call the Court and the opposing party by 4:00 p.m. on the court day before the

6    hearing, no hearing will be held.

7         Dated: December _15_, 2009          Respectfully submitted,

8                                 **LAW OFFICES OF**
                                  **SCOT D. BERNSTEIN**

9                                 A Professional Corporation

10                                 **ALEXANDER KRAKOW + GLICK LLP**

11                                 **LAW OFFICES OF**
                                  **WILLIAM P. TORNGREN**

12

13                                 By *William P. Torg*

14                                       William P. Torngren

15                                     Attorneys for Plaintiff

16

17

18

19

20

21

22

23

24

25

26

27

28

1  William P. Torngren (Cal. Bar No. 58493)
   **LAW OFFICES OF WILLIAM P. TORNGREN**
2  117 J Street, Suite 300
   Sacramento, California 95814
3  Telephone: (916)554-6447
   Facsimile: (916)554-6445
4  Email: Torngren@TorngrenLaw.com

5  Scot D. Bernstein (Cal. Bar No. 94915)
   **LAW OFFICES OF SCOT D. BERNSTEIN**
6  **A Professional Corporation**
   101 Parkshore Drive, Suite 100
7  Folsom, California 95630
   Telephone:  (916) 447-0100
8  Facsimile:  (916) 933-5533
   Email: swampadero@sbernsteinlaw.com
9
   Gail A. Glick (Cal. Bar No. 174293)
10 **ALEXANDER KRAKOW + GLICK LLP**
   401 Wilshire Boulevard, Suite 1000
11 Santa Monica, California 90401
   Telephone: (310) 394-0888
12 Facsimile: (310) 394-0811
   Email: gglick@akgllp.com
13
14 Attorneys for Plaintiff

15               **SUPERIOR COURT**
             **SACRAMENTO COUNTY, CALIFORNIA**
16                **(Unlimited Jurisdiction)**

17

18 CARL R. WRIGHT, on behalf of himself, all   )   Case No. 34-2009-00064221
   others similarly situated, and the general   )
19 public,                                      )   **MEMORANDUM IN SUPPORT**
                                                )   **OF MOTION FOR**
20                Plaintiff,                     )   **DETERMINATION THAT**
                                                )   **DEFENDANTS CANNOT**
21        v.                                     )   **PURSUE ARBITRATION OF**
                                                )   **CLASS CLAIMS**
22 RBC CAPITAL MARKETS CORPORATION, )
   et al.,                                      )   Date:   January 13, 2010
23                                              )   Time:   2:00 p.m.
                  Defendants.                    )   Dept:   53
24 _____ )   Before the Honorable Loren E.
                                                    McMaster
25
                                                    Complaint filed: November 17, 2009
26

27

28  ////

Plaintiff, on behalf of himself, all present and former California employees similarly situated, and the general public moves for an order (1) determining that plaintiff's filing of this putative class action divests FINRA Dispute Resolution of its authority to arbitrate the claim of defendant RBC Wealth Management, A Division of RBC Capital Markets Corporation, in FINRA Arbitration No. 09-04264 ("the Arbitration") and (2) that defendants cannot pursue any arbitration of class claims.

**Introduction**

FINRA's Code of Arbitration Procedure ("the Code") expressly provides that class action claims cannot be arbitrated under the Code. It further provides that a member of the Financial Industry Regulatory Authority, Inc., which is known as "FINRA," may not enforce any arbitration agreement against a member of a certified or putative class with respect to any claim that is the subject of the class action.

This class action asserts, among other things, that so-called "promissory notes" signed by plaintiff and other putative class members are unenforceable as a matter of California law. Defendants, which are members of FINRA, commenced the Arbitration against plaintiff to enforce those same "promissory notes." Because the enforceability of the "promissory notes" is the subject of this putative class action, FINRA may not adjudicate those claims and defendants may not enforce their arbitration agreements against plaintiff or other putative class members.

The Code also provides that a party may ask the court hearing the class action to decide any dispute as to whether a claim is part of a class action. Thus, plaintiff asks this Court for the requested relief for himself and the other members of the putative class.

**The History of the Dispute**

The history of the dispute is as follows:

- In July 2009, defendant RBC Wealth Management, a Division of defendant RBC Capital Markets Corporation, filed a Statement of Claim to commence an arbitration proceeding administered by FINRA Dispute Resolution. The Statement of Claim in the Arbitration seeks to enforce so-called "promissory notes" signed by plaintiff Carl R. Wright. A true copy of the Statement of Claim is Exhibit A to the Declaration of

| | |
|---|---|
| 1 | William P. Torngren. |
| 2 | • On November 17, 2009, plaintiff Carl R. Wright filed the above-entitled putative |
| 3 | class action.  He brings claims under the California Labor Code, under the California |
| 4 | Unfair Competition Law, and for declaratory relief.  Those claims are brought |
| 5 | individually, on behalf of a putative class of "financial advisors," and on behalf of |
| 6 | the general public.  The Complaint alleges, inter alia, that the so-called "promissory |
| 7 | notes" are not enforceable as they are unlawful or unfair attempts to recoup signing |
| 8 | bonuses.  Class Action Complaint for Violations of the California Labor Code, |
| 9 | Unfair Competition Law, and Declaratory Relief, ¶¶ 5, 58-67. |
| 10 | • On November 17, 2009, plaintiff's attorney sent a letter advising FINRA and |
| 11 | defendant RBC Wealth Management, A Division of RBC Capital Markets |
| 12 | Corporation, that the class action had been filed and that it divested FINRA Dispute |
| 13 | Resolution of its authority to hear the Arbitration.  A true copy of the letter is Exhibit |
| 14 | B to the Declaration of William P. Torngren. |
| 15 | • On December 7, 2009, plaintiff received a letter from FINRA Dispute Resolution |
| 16 | advising that it had decided to refer to an arbitration panel the determination of |
| 17 | whether the claim that defendant asserts in the Arbitration is included in the class |
| 18 | action pending in this Court.  A true copy of the letter is Exhibit C to the Declaration |
| 19 | of William P. Torngren. |
| 20 | • On December 2, 2009, plaintiff's attorneys sent a letter to the California Labor and |
| 21 | Workforce Development Agency pursuant to Labor Code Private Attorneys' General |
| 22 | Act ("PAGA") to exhaust administrative remedies prerequisite to amending the |
| 23 | Complaint to allege violations of PAGA.  Cal. Labor Code § 2699.3(a)(2)(C) |
| 24 | (providing for amendment as a matter of right upon exhaustion).  Among the |
| 25 | predicates asserted under PAGA are violations of Labor Code sections 221 and |
| 26 | 404(b).  Those violations relate to the so-called "promissory notes" at issue in the |
| 27 | putative class action.  A true copy of the PAGA letter is Exhibit D to the Declaration |
| 28 | of William P. Torngren. |

**FINRA's Rules Preclude Its Hearing Claims from Class Actions**

FINRA Dispute Resolution's authority to hear claims is set forth in its rules. Those rules provide that claims based upon the facts and law asserted in a putative class action shall not be arbitrated in a proceeding administered by FINRA Dispute Resolution and that a FINRA member may not assert a claim in arbitration against a putative class member or enforce an arbitration agreement against a putative class member.

Specifically, Rule 13204 of the Code governs claims found in class actions and provides:

> (a) **Class action claims may not be arbitrated under the Code.**

> (b) **Any claim that is based upon the same facts and law, and involves the same defendants as in a court-certified class action or a putative class action,** or that is ordered by a court for class-wide arbitration at a forum not sponsored by a self-regulatory organization, **shall not be arbitrated under the Code,** unless the party bringing the claim files with FINRA one of the following:

>> (1) a copy of a notice filed with the court in which the class action is pending that the party will not participate in the class action or in any recovery that may result from the class action, or has withdrawn from the class according to any conditions set by the court; or

>> (2) a notice that the party will not participate in the class action or in any recovery that may result from the class action.

> (c) The Director will refer to a panel any dispute as to whether a claim is part of a class action, **unless a party asks the court hearing the class action to resolve the dispute within 10 days of receiving notice that the Director has decided to refer the dispute to a panel.**

> (d) **A member or associated person may not enforce any arbitration agreement against a member of a certified or putative class action with respect to any claim that is the subject of the certified or putative class action until:**

>> • The class certification is denied;

>> • The class is decertified;

>> • The member of the certified or putative class is excluded from the class by the court; or

>> • The member of the certified or putative class elects not to participate in the class or withdraws from the class according to conditions set by the court, if any.

> This paragraph does not otherwise affect the enforceability of any rights under the Code or any other agreement.

[Emphasis Added.]

**Comparing the Statement of Claim and Complaint Show FINRA Has No Authority**

That FINRA has no authority pursuant to its Rule 13204 is readily apparent from reading the Statement of Claim and the Complaint side-by-side. The overlap between the two is manifest:

1. The Statement of Claim alleges the securities industry custom of paying money as a "recruitment inducement." Statement of Claim, p. 1, ll. 11-13. The Complaint alleges defendants have spent millions of dollars to entice financial consultants such as plaintiff to move from competitors and bring their customers to defendants. Complaint, ¶ 25.

2. The Statement of Claim alleges that plaintiff signed an employment agreement and "promissory note" in 2006. Statement of Claim, p. 2, ll. 6-8. The Complaint alleges that "bonuses" paid to entice financial consultants are structured as "loans." Complaint, ¶ 35. The Complaint further alleges that in connection with receiving the bonus, plaintiff and class members executed so-called "promissory notes." Complaint, ¶ 35 b.

3. The Statement of Claim alleges that plaintiff received a check for $202,000 from defendant RBC Wealth Management. Statement of Claim, p. 2, ll. 15-16. Exhibit 3 to the Statement of Claim is a check drawn on the account of defendant RBC Dain Rauscher Inc. The Complaint alleges that, as an enticement to come to work for defendants, plaintiff was paid a bonus based upon his gross production at another securities firm. Complaint, ¶ 25.

4. The Statement of Claim alleges that plaintiff signed a replacement promissory note in January 2009. Statement of Claim, p. 2, ll. 24-26; p. 3, ll. 7-8. The replacement note was for the unforgiven balance of the 2006 note. *See* Statement of Claim, p. 2, ll. 18-19 ("by the end of 2009 [*sic*], the balance was $129.056"); p. 3, ll. 7-8 ("loan balance on the . . . 2006 Note was replaced by a loan balance on the new Promissory Note"). In sum, the Statement of Claim seeks to recoup the bonus paid to recruit plaintiff away from another firm. The Complaint alleges that seeking to enforce

1   promissory notes signed in connection with recruitment bonuses constitutes unfair

2   competition. Complaint, ¶ 54.  In seeking a declaration of rights, plaintiff and the

3   class contend that any attempt by defendants to recoup or collect on the recruitment

4   bonuses violates section 221 of the Labor Code and that the so-called "promissory

5   notes" therefore are unenforceable.  Complaint, ¶¶ 60, 62.

6   5.   Exhibit 1 to the Statement of Claim contains representations regarding plaintiffs'

7   total production "immediately preceding his/her employment with" defendant RBC

8   Dain Rauscher Inc.  Exhibit 1 to the Statement of Claim also provides that

9   "Employee understands that the amount of this loan is determined based on

10   Employee's representation of his/her Base Commission Amount."  The Complaint

11   alleges that recruiting enticements are based upon gross production at the competitor

12   firm.  Complaint, ¶ 25.

13   6.   Exhibit 1 to the Statement of Claim effectively delivers plaintiff's book of business

14   to defendants as it prohibits plaintiff from "initiat[ing] contact with any client that

15   he/she originated or provided services to while at RBC Dain . . . ."  Other and equally

16   onerous non-solicitation prohibitions are contained in Exhibit 1.  The Complaint

17   alleges that plaintiff and class members performed their basic obligation for the

18   bonuses by coming to work for defendants and making their best efforts to entice

19   their customers to transfer accounts from competitors to defendants.  Complaint, ¶

20   36.  In seeking a declaration of rights, plaintiff and the class contend that up-front

21   money paid by defendants was their purchase price of his and class members' books

22   of business and that defendants' claim to recoup some of that purchase price, in

23   effect, would require plaintiff and class members to pay defendants' business

24   expenses in violation of the Labor Code.  Complaint, ¶ 63.

25   7.   The Statement of Claim seeks to enforce or collect on the ostensible obligation

26   arising out of the unforgiven portion of the monies paid up front as a "recruitment

27   inducement."  See Statement of Claim, p. 4. The Complaint alleges that seeking to

28   enforce promissory notes signed in connection with recruitment bonuses constitutes

unfair competition.  Complaint, ¶ 54.  In seeking a declaration of rights, plaintiff and the class contend that any attempt by defendants to recoup or collect on the recruitment bonuses violates section 221 of the Labor Code and that the so-called "promissory notes" are unenforceable.  Complaint, ¶¶ 60, 62.  Plaintiff and the putative class contend that the so-called "promissory notes" are otherwise unenforceable.  Complaint, ¶¶ 61, 63, 64.

Thus, simply comparing the Complaint in this putative class action with the Statement of Claim in the Arbitration, we submit, leads to the following conclusions:

1.    THE ARBITRATION CLAIM IS "BASED UPON THE SAME FACTS AND LAW" AND "INVOLVES THE SAME DEFENDANT" AS THIS PUTATIVE CLASS ACTION.  Under such circumstances, the claims in the Arbitration cannot be arbitrated in a proceeding administered by FINRA Dispute Resolution.  *See* Rule 13204(b).

2.    BY THIS MOTION, WHICH IS FILED WITHIN 10 DAYS OF RECEIVING NOTICE FROM FINRA, PLAINTIFF IS SEEKING A DETERMINATION BY THE COURT HEARING THE CLASS ACTION THAT THE CLAIM IN THE ARBITRATION IS PART OF THE PENDING PUTATIVE CLASS ACTION.  Under such circumstances, any panel appointed by FINRA Dispute Resolution does not have authority to determine whether the claim is part of this class action.  *See* Rule 13204(c).

3.    AS FINRA MEMBERS, DEFENDANTS PRESENTLY CANNOT ENFORCE ANY ARBITRATION AGREEMENT AGAINST PLAINTIFF OR ANY MEMBER OF THE PUTATIVE CLASS WITH RESPECT TO ANY CLAIM THAT IS SUBJECT OF THIS CLASS ACTION.  Any attempt by defendants to enforce their so-called "promissory notes" against plaintiff or any other financial advisor, registered representative, or putative class member violates the Code of Arbitration Procedure.  *See* Rule 13204(d).

////

**Requested Order**

     In view of the foregoing, plaintiff respectfully requests that this Court order the following:

1.     The claims made by defendant RBC Wealth Management, A division of RBC Capital Markets Corporation, in the Arbitration are based upon the same facts and law and involve the same defendants as this putative class action.

2.     The Arbitration shall be stayed in all respects pending further order of this Court.

3.     Defendants and their assignees cannot enforce any arbitration agreement against plaintiff or any member of the putative class with respect to so-called "promissory notes" pending further order of this Court.

4.     Defendants and their assignees shall notify each putative class member against whom they are enforcing or seeking to enforce an arbitration agreement with respect to so-called "promissory notes" of the pendency of this putative class action and of this Court's order.

**Conclusion**

     The Arbitration seeks to enforce "promissory notes" that this putative class action asserts are unenforceable.  Under its own rules, FINRA lacks the authority to resolve the claims made in the Arbitration and defendants may not enforce their arbitration agreements.  The Court, we submit, should order the relief requested by plaintiff.

    Dated: December 15, 2009           Respectfully submitted,

                                        **LAW OFFICES OF**
                                        **SCOT D. BERNSTEIN**
                                        A Professional Corporation

                                        **ALEXANDER KRAKOW + GLICK LLP**

                                        **LAW OFFICES OF**
                                        **WILLIAM P. TORNGREN**

                                        By _William P. Torngren_
                                             William P. Torngren

                                        Attorneys for Plaintiff

1  William P. Torngren (Cal. Bar No. 58493)
   **LAW OFFICES OF WILLIAM P. TORNGREN**
2  117 J Street, Suite 300
   Sacramento, California 95814
3  Telephone: (916)554-6447
   Facsimile: (916)554-6445
4  Email: Torngren@TorngrenLaw.com

5  Scot D. Bernstein (Cal. Bar No. 94915)
   **LAW OFFICES OF SCOT D. BERNSTEIN**
6  **A Professional Corporation**
   101 Parkshore Drive, Suite 100
7  Folsom, California 95630
   Telephone:  (916) 447-0100
8  Facsimile:  (916) 933-5533
   Email: swampadero@sbernsteinlaw.com
9
   Gail A. Glick (Cal. Bar No. 174293)
10 **ALEXANDER KRAKOW + GLICK LLP**
   401 Wilshire Boulevard, Suite 1000
11 Santa Monica, California 90401
   Telephone: (310) 394-0888
12 Facsimile: (310) 394-0811
   Email: gglick@akgllp.com
13
   Attorneys for Plaintiff
14

15                       **SUPERIOR COURT**
                 **SACRAMENTO COUNTY, CALIFORNIA**
16                    **(Unlimited Jurisdiction)**

17

18 CARL R. WRIGHT, on behalf of himself, all    )   Case No. 34-2009-00064221
   others similarly situated, and the general     )
19 public,                                        )   **DECLARATION OF WILLIAM**
                                                  )   **P. TORNGREN IN SUPPORT OF**
20         Plaintiff,                             )   **DETERMINATION THAT**
                                                  )   **DEFENDANTS CANNOT**
21     v.                                         )   **PURSUE ARBITRATION OF**
                                                  )   **CLASS CLAIMS**
22 RBC CAPITAL MARKETS CORPORATION, )
   et al.,                                        )   Date:   January 13, 2010
23                                                )   Time:   2:00 p.m.
           Defendants.                            )   Dept:   53
24 _____ )   Before the Honorable Loren E.
                                                      McMaster
25
                                                      Complaint filed: November 17, 2009
26

27

28 ////

DECLARATION OF WILLIAM P. TORNGREN IN SUPPORT OF MOTION                                    Page 1

I, William P. Torngren, declare:

1. I am an attorney admitted to practice before all courts in the State of California and am one of the attorneys for plaintiff in this putative class action. If called and sworn, I could testify to the following from my personal knowledge or from records kept in the ordinary course of my law practice.

2. This Declaration is made in support of Plaintiff's Motion for Determination that Defendants Cannot Pursue Arbitration of Class Claims.

3. Attached as Exhibit A to this Declaration is a true copy of RBC Wealth Management's Statement of Claim with accompanying exhibits. It is dated July 13, 2009, and was filed with the Financial Industry Regulatory Authority, Inc. ("FINRA").

4. On November 17, 2009, I caused the Class Action Complaint for Violations of the California Labor Code, Unfair Competition Law, and Declaratory Relief to be filed in the Sacramento County Superior Court. Plaintiff Carl R. Wright is the named plaintiff and brings this putative class action on behalf of himself, all others similarly situated, and the general public.

5. On November 17, 2009, I sent a letter FINRA (by fax and e-mail) and the attorneys for defendant RBC Wealth Management, A Division of RBC Capital Markets Corporation (by fax). Attached as Exhibit B to this Declaration is a true copy of my letter of November 17, 2009, without the attachment. The attachment to the letter was the a copy of the "filed" endorsed complaint.

6. Attached as Exhibit C to this Declaration is a true copy of a letter from FINRA to Marvin Krakow of Alexander Krakow + Glick LLP. The letter is dated December 3, 2009, and bears a "received" stamp of December 7, 2009.

7. On December 2, 2009, I caused a letter to sent to the California Labor and Workforce Development Agency. Among the predicates which I asserted under the Labor Code Private Attorneys' General Act were violations of sections 221 and 404(b) of the California Labor Code. Those violations relate to the so-called "promissory notes" at issue in the putative class action and the Arbitration. Exhibit D to this Declaration is a true copy of my letter of December 2, 2009.

8. Exhibit E to this Declaration is a true copy of Rule 13204 of the FINRA Code of Arbitration Procedure.

1   I declare under penalty of perjury under the laws of the State of California that the foregoing

2 is true and correct and that declaration is executed on December 15, 2009, in Sacramento,

3 California.

4

5               William P. Torngren

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT A

RBC WEALTH MANAGEMENT'S
STATEMENT OF CLAIM

(Dated July 13, 2009)

1  David H.S. Commins (CSBN 124205)
   Kit L. Knudsen (CSBN 154714)
2  COMMINS & KNUDSEN, P.C.
   400 Montgomery Street, Suite 200
3  San Francisco, CA 94104
   Tel (415) 391-6490
4  Fax (415) 391-6493

5  Attorneys for Claimant
   RBC Wealth Management

6

7

8                         BEFORE THE

9        FINANCIAL INDUSTRY REGULATORY AUTHORITY

10

11

12  RBC WEALTH MANAGEMENT, A
    Division of RBC Capital Markets              No.
13  Corporation,

14            Claimant,                          RBC WEALTH MANAGEMENT'S
                                                 STATEMENT OF CLAIM
15      vs.

16  CARL WRIGHT,

17            Respondent.

18

19

20

21

22

23

24

25

26

27

28

COMMINS & KNUDSEN
PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

# I

## INTRODUCTION

This is an action by RBC Wealth Management, a Division of RBC Capital Markets Corporation ("RBC Wealth Management") to obtain repayment of a Promissory Note received from its former Employee, Carl Richard Wright, CRD #473096.  The matter is brought pursuant to NASD Rules 10100 and 10201 of the Code of Arbitration Procedure.  Pursuant to Rule 10303, unless a counterclaim is pled, RBC Wealth Management requests that the matter be resolved solely upon the pleadings and documentary evidence.

As is customary within the financial services industry, in order to help the employee transition to the new firm and as a recruitment inducement, the employee often receives a loan that is secured by a promissory note.  The loan is generally immediately due and payable in full in the event the employee leaves for any reason before the maturity date of the note.  In such a circumstance, the employee is obliged to repay the outstanding balance of the loan, plus accrued interest.

Mr. Wright received a loan from and signed a promissory note to RBC Wealth Management.  His employment with RBC Wealth Management terminated in January 2009, but the balance of his loan remains unpaid to date.  Accordingly, RBC Wealth Management seeks an award for the outstanding principle balance, interest, costs and reasonable attorneys' fees.

- 1 -

RBC WEALTH MANAGEMENT'S STATEMENT OF CLAIM

II

STATEMENT OF FACTS

A.   In October 2006 Mr. Wright Signs A $202,000 Note To RBC Wealth Management

On or about October 27, 2006 Mr. Wright signed an Employment Agreement with and a Promissory Note to RBC Wealth Management.  (Attached as Claimant's Exhibits 1 and 2.) The Note was for $202,000, was payable over six years, and had an interest rate of 4.71 percent per annum.  Pursuant to the Employment Agreement, 1/72 of the principal and interest was to be forgiven each month over six years.

B.   Mr. Wright Receives $202,000 From RBC Wealth Management And It Forgives His Monthly Payments For The Next 26 Months

On or about October 31, 2006, Mr. Wright received a check from RBC Wealth Management for $202,000.  (Attached as Claimant's Exhibit 3.)  Each month for 26 months between the end of December 2006 and the end of January 2009, 1/72 of the principal and interest ($2,806 per month) was forgiven on Mr. Wright's Note balance.  Thus, by the end of January 2009, the balance was $129, 056.

C.   In January 2009 RBC Wealth Management Permits Mr. Wright To Re-Finance At A Lower Interest Rate

In January 2009 RBC Wealth Management offered Mr. Wright an opportunity to re-finance his Note at a lower interest rate.  He accepted, and on or about January 13, 2009, he entered into a second Loan Agreement with RBC Wealth Management.  (Attached as Claimant's Exhibit 4.)  Under the second Loan Agreement, RBC Wealth Management agreed to loan Mr.

- 2 -

COMMINS & KNUDSEN
PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

1    Wright $129,055 pursuant to a new Promissory Note (attached as Claimant's Exhibit 5), which

2    Mr. Wright also executed on or about January 13, 2009.

3

4    **D.**    Mr. Wright's Employment Terminates On January 30, 2009; He Leaves Owing The

5            Entire Balance On The New Note

6

7            After executing the second Note, Mr. Wright's loan balance on the October 27,

8    2006 Note was replaced by a loan balance on the new Promissory Note, which had an interest

9    rate of 2.04 percent per annum and was to be repaid over the next six years; the payments due on

10   the second Note were to be forgiven on the last business day of each month starting in February

11   2009 as long as Mr. Wright remained employed with RBC Wealth Management.

12

13           Mr. Wright's employment was terminated on January 30, 2009. The unforgiven

14   portion of the Note became immediately due and payable on that date. The principle amount

15   remaining on the Note as of Wright's termination date was $129,055.44. Interest is accumulating

16   at a rate of 2.04% per annum ($7.21 per diem) since the date of his termination. Therefore, the

17   debt Mr. Wright owes for on Note is $129,055.44 plus accruing per diem interest, fees and costs.

18

19           RBC Wealth Management made a demand upon Mr. Wright for payment of the

20   default amount by letter dated February 3, 2009 (attached as Claimant's Exhibit 6). Although the

21   parties have been in communication regarding the outstanding debt, to date, no payment has been

22   made; therefore, Mr. Wright remains in default. Further, the Notes provide that Mr. Wright is

23   responsible for all costs of collection upon default, including reasonable attorneys' fees.

24

25

26

27

28

- 3 -

RBC WEALTH MANAGEMENT'S STATEMENT OF CLAIM

COMMINS & KNUDSEN
PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

III

RELIEF REQUESTED

By reason of the foregoing, Mr. Wright has breached his contractual obligations to RBC Wealth Management.   Therefore,  RBC Wealth Management requests that judgment be entered in its favor as follows:

(1)     Ordering Mr. Wright to pay $129,055.44 plus interest at the rate of 2.04% per annum ($7.21 per diem) on the principal balance owed on the second Note since January 30, 2009;

(2)     Ordering Wright to pay RBC Wealth Management's costs and expenses of this proceeding, including reasonable attorneys' fees, and;

(3)     Awarding any further relief the Panel deems fair and just.

DATED:  July 13, 2009.

COMMINS & KNUDSEN
Professional Corporation

By: _David H.S. Commins_____
David H.S. Commins
Attorneys for Claimant
RBC Wealth Management

- 4 -

RBC WEALTH MANAGEMENT'S STATEMENT OF CLAIM

**EXHIBIT 1**

 **RBC Dain Rauscher**

## Employment Agreement

October 27, 2006

THIS AGREEMENT is made and entered into on and as of the date written below between the below-named employee (hereinafter "Employee") and RBC Dain Rauscher Inc., a Minnesota corporation with its principal place of business at Dain Rauscher Plaza, 60 South Sixth Street, Minneapolis, MN 55402-4422 (hereinafter "RBC Dain").

WHEREAS, Employee desires to enter into the employment of RBC Dain as its Financial Consultant for the compensation and on the terms provided herein;

WHEREAS, Employee represents that that his/her total commissions, fees, etc., for the twelve month period immediately preceding his/her employment with RBC Dain was $320,000 which will be defined as the "Base Commission Amount" for this agreement;

WHEREAS, Employee represents that his/her total assets under management ("AUM") in the month immediately preceding his/her employment with RBC Dain was $32 million, which will be defined as the "Base AUM" for this agreement;

WHEREAS, Employee represents that he/she is fully registered and/or licensed with all applicable regulatory authorities as a registered representative, and has disclosed in writing to RBC Dain all past or present circumstances that could have an adverse effect upon the status of such licenses and/or registrations, or hinder prompt and effective transfer of such licenses and/or registrations;

WHEREAS, in reliance on the foregoing representations, which are material, RBC Dain desires to employ Employee as an at-will employee on the terms and conditions stated below.

NOW, THEREFORE, in consideration of their mutual agreements, RBC Dain and Employee agree as follows:

1. Employment.

   a. At-Will Employment.    RBC Dain agrees to employ Employee, and Employee agrees to be employed by RBC Dain, as a Financial Consultant. Employee shall be an at-will employee and nothing herein shall be construed as creating a contract for employment is a promise of employment for a fixed term.

   b. Full Effort.    Employee agrees to devote all of his/her productive efforts for the benefit of RBC Dain, devoting "full-time" service to RBC Dain within the meaning of applicable NYSE regulations, shall be and remain loyal to RBC Dain during the term of his/her employment, and shall not, directly or indirectly, solicit or sell securities except on behalf of RBC Dain;

   c. Compliance with Laws and Policies. Employee agrees to conduct all business affairs while in the employment of RBC Dain in accordance with the spirit and full compliance of all securities rules and regulations, as well as all RBC Dain policies and regulations;

1

2.   Compensation.

  a.   Commission based earnings:          For production generated during the first 13 months of
       employment, RBC Dain agrees to credit Employee, on a monthly basis, a 39% commission (less
       discount adjustments, small ticket charges, and other charges as specified by RBC Dain's policies and
       procedures) on customer commissions actually received by RBC Dain for Employee's activities as an
       RBC Dain Financial Consultant. After this time, RBC Dain will pay Employee, monthly, based upon
       the current RBC Dain commission based earnings schedule in effect from time to time.

  b.   Benefits:          Employee shall be eligible to participate in RBC Dain's benefit programs in
       accordance with his/her position as a Financial Consultant. RBC Dain reserves to change, modify, or
       discontinue any benefit program at its sole discretion

3.   Forgivable Loans.

  a.   Initial Forgivable Loan:

    i.     Upon transfer of Employee's securities license(s), and in reliance on all of Employee's
           representations regarding their "Base Commission Amount" and "Base AUM" contained
           herein, RBC Dain will loan Employee $202,000 pursuant to a Promissory Note.
           Employee understands that the amount of this loan is determined based on Employee's
           representation of his/her Base Commission Amount. Employee is obligated to repay that
           Promissory Note unless he/she continues as a Financial Consultant of RBC Dain. Subject
           to that condition, as set forth in more detail below, RBC Dain shall forgive amounts due
           under the Promissory Note as follows: On December 29, 2006, and on the last business
           day of each subsequent month as long as any amount of principal or interest is
           outstanding on the Promissory Note, RBC Dain shall forgive 1/72nd of the Promissory
           Note and all accrued interest. Each of these dates is a Monthly Anniversary Date."

    ii.    For each Monthly Anniversary Date, the forgiving of any debt shall take place only if
           Employee remains continuously and actively employed as a Financial Consultant by RBC
           Dain from the date such employment commenced through the entire Monthly Anniversary
           Date. At each Monthly Anniversary Date, if this condition is met, no notice by RBC Dain is
           necessary to effect the forgiving of the debt.

    iii.   The amount of any debt scheduled to be forgiven hereunder shall accrue interest as
           specified in the Promissory Note. The amount of all accrued interest at each Monthly
           Anniversary Date shall be forgiven at the same time as the principal amount is forgiven.

    iv.    Upon the forgiving of any amounts due under the Promissory Note, Employee shall owe
           RBC Dain the amount that, in RBC Dain's sole judgment, is necessary to satisfy federal,
           state and local withholding tax requirements, including income tax and FICA withholding
           (the "Withholding Amount"). RBC Dain may deduct the Withholding Amount from
           Employee's compensation at any time from the forgiveness date forward until the full
           Withholding Amount is paid by Employee to RBC Dain.

    v.     Employee understands that amounts of the principal and interest forgiven under this
           Agreement shall be disregarded for purposes of RBC Dain's employee benefit plans,
           including but not limited to, stock bonus plans and profit-sharing plans.

    vi.    Employee agrees that in the event of the termination of his/her employment with RBC Dain
           as a Financial Consultant for any reason whatsoever while any amount remains outstanding
           on the Promissory Note, that he/she will immediately repay to RBC Dain at RBC Dain's

2

principal office at Dain Rauscher Plaza, 60 South Sixth Street, Minneapolis, MN that portion of the amount of the Promissory Note which has not been forgiven on the date of such termination.

vii.  To secure the repayment of the loan described in this paragraph, Employee is executing and delivering to RBC Dain the attached Promissory Note simultaneously with the execution of this Agreement. Employee further grants to RBC Dain the right to set off against amounts owed by RBC Dain to Employee, or held for the benefit of Employee by RBC Dain, pursuant to commissions generated or other amounts, against the amounts owing with respect to the Promissory Note, at or subsequent to the termination of Employee's employment at RBC Dain.

b.  12th Month Loan:

After 12 full months of employment with RBC Dain, RBC Dain will loan Employee an additional amount as specified in this paragraph, pursuant to a Promissory Note and Forgivable Loan Agreement that will coincide with Employee's existing forgivable loan.  This loan amount will be 65% of Employee's Qualifying Trailing Twelve Months Production, minus the original amount of the loan described in Paragraph 3(a) of this Agreement. For purposes of this paragraph, the Qualifying Trailing Twelve Months Production is the amount of Employee's gross production from November 2006 through October 2007 that is attributable to an average AUM turn of 1.5% or less.  Any portion of gross production that is attributable to an average AUM turn of greater than 1.5% will be disregarded for calculating the Qualifying Trailing Twelve Months Production.

c.  24th Month Loan:

After 24 full months of employment with RBC Dain, RBC Dain will loan Employee an additional amount as specified in this paragraph, pursuant to a Promissory Note and Forgivable Loan Agreement that will coincide with Employee's existing forgivable loans.  This loan amount will be 70% of Employee's Qualifying Trailing Twelve Months Production at the end of 24 full months of employment at RBC Dain, minus the original loan amount in Paragraph 3(a) and the 12th month original loan amount in Paragraph 3(b) of this Agreement. For purposes of this paragraph, the Qualifying Trailing Twelve Months Production is the amount of Employee's gross production from November 2007 through October 2008 that is attributable to an average AUM turn of 1.5% or less. Any portion of gross production that is attributable to an average AUM turn of greater than 1.5% will be disregarded for calculating the Qualifying Trailing Twelve Months Production.

d.  Tax Compliance:

Both RBC Dain and Employee agree to abide by applicable terms, conditions and reporting and filing requirements as to the tax implications of the forgiving (or failure to forgive) of the loan amount and accrued interest, or any portion thereof.

4.  Confidentiality.

As an express condition of Employee's employment, Employee understands and agrees that that as an employee he/she will receive or have access to confidential client information and will receive, have access to, or contribute to, proprietary, confidential, and trade secret information of RBC Dain. Employee agrees that at all times during his/her employment and after the termination thereof for any reason whatsoever, he/she shall keep secret all such client confidential information and RBC Dain proprietary, confidential, and trade secret information and that he/she will not use or make known the same to any person, firm, or corporation without first obtaining the written consent of the client or RBC Dain. Employee acknowledges that client information, including the client's name, address, contact information, investment information

3

and data, and financial information is confidential to the client and is not to be used or disclosed for any purpose other than to allow Employee to provide financial advice as a representative of RBC Dain and that any other use is a violation of both RBC Dain's policies and applicable federal and state laws. Employee acknowledges that RBC Dain's proprietary, confidential, and trade secret knowledge or information, including by not limited to RBC Dain's internal personnel, financial, marketing and other business information, manner and method of conducting business, strategic, operations, and other business plans and forecasts, information provided by, relating to or regarding a party's employees, customers, vendors, and consultants, and customer information, constitutes a unique and valuable asset of RBC Dain and represents a substantial investment of time and expense by RBC Dain, and that any disclosure or other use of such knowledge or information other than for the sole benefit of RBC Dain would be wrongful and would cause irreparable harm to RBC Dain. The foregoing obligations of confidentiality shall not apply to any knowledge or information that is now published or which subsequently becomes generally publicly known in the form in which it was obtained from RBC Dain, other than as a direct or indirect result of the breach of this Agreement by the Employee.

Employee further understands and agrees that upon termination of employment, Employee shall deliver promptly to RBC Dain, all records, manuals, books, blank forms, documents, letters, memoranda, notes, notebooks, reports, data, tables, calculations or copies thereof that relate in any way to the clients of, or the business of, RBC Dain, and all other property, trade secrets and confidential information of RBC Dain, including, but not limited to, all computer and telephone equipment, computer disks and storage devices, credit cards, and documents that in whole or in part contain any trade secrets or confidential information of RBC Dain, which in any of these cases are in Employee's possession or under Employee's control.

5.   Non-Solicitation.

Employee agrees that, solely due to Employee's position with RBC Dain, Employee will have access to client confidential information and certain trade secret, confidential, and proprietary information of RBC Dain. Employee acknowledges that RBC Dain will only release this information upon the receipt of assurances that Employee will not use the information to RBC Dain's disadvantage.

Accordingly, in exchange for that information and for the consideration provided by this Agreement, Employee agrees that, for so long as Employee has any remaining repayment obligations under a Promissory Note or Forgivable Loan, or for a period of twelve (12) months following the termination of Employee's employment, regardless of the reason for termination, which ever period is less, Employee shall not, directly or indirectly:

a.   initiate contact with any client that he/she originated or provided services to while at RBC Dain;

b.   notify any client that he/she originated or provided services to while at RBC Dain that he/she is anticipating, has decided to, or has, left the employ of RBC Dain or accepted employment from any broker-dealer or investment banking firm other than RBC Dain;

c.   solicit or aid in the solicitation of the transfer of the accounts, including the mailing or assistance in mailing of transfer of account forms, of any clients having accounts with RBC Dain and with whom the Employee shall have had any dealings whatsoever while at RBC Dain; or

d.   recruit or solicit, or aid in the recruitment or solicitation of any RBC Dain employee (other than the client associate supporting Employee at the time of termination) for employment with any broker-dealer or investment banking firm other than RBC Dain.

4

6.   Injunctive Relief.

Employee further agrees that, in the event of a violation of the Confidentiality or Non-Solicition covenants, RBC Dain may apply for and obtain from any state or federal court a temporary restraining order ("TRO") or injunction prohibiting the violation of this paragraph pending arbitration before an NYSE or NASD arbitration panel, and a decision of that panel. Employee hereby consents to the entry of such a TRO or injunction. Furthermore, in the event that an award or order for injunctive or other relief shall be granted to RBC Dain in enforcing this paragraph, Employee agrees to pay any and all reasonable costs and expenses of RBC Dain (including attorney's fees) incurred in obtaining such relief.

7.   Choice of Law.

This Agreement shall be subject to and construed under the laws of the State of Minnesota.

8.   Severability.

In the event that any one or more of the provisions contained in this Agreement shall for any reason be held to be invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect any other provisions hereof, and this Agreement shall be construed as if such invalid, illegal, or unenforceable provision had never been contained herein.

9.   Assignment.

This Agreement may be assigned by RBC Dain to a company acquiring, affiliated with, or controlled directly or indirectly by, RBC Dain and will be deemed valid and enforceable without the consent of the Employee. No right of Employee under this Agreement shall be assigned or assignable by voluntary or involuntary assignment.

10.   Acknowledgement.

Employee hereby affirms and acknowledges that he/she has read this Agreement, that he/she understands the meaning of the terms of this Agreement and their effect, and that the provisions set forth in the Agreement are written in language understandable to him/her, Employee has had an opportunity to consult with an attorney and represents that he/she enters into this Agreement freely and voluntarily.

11.   Entire Agreement.

This written document and the corresponding Promissory Note contain the entire agreement of Employee and RBC Dain relating to Employee's employment. Employee represents that he/she is not relying on any oral or other written representations, and acknowledges that this Agreement supersedes any prior oral or written representations.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the twenty-seventh day of October, 2006.

_____
Carl R. Wright

RBC DAIN RAUSCHER INC.

By: _____

Its: [Title] _Complex Director_
Private Client Group

5

EXHIBIT 2

**RBC**
**Dain Rauscher**

## PROMISSORY NOTE

$202,000                                                              October 27, 2006

1.  FOR VALUE RECEIVED, the undersigned promises to pay to the order of RBC Dain Rauscher Inc. ("RBC Dain") the principal sum of $202,000 plus interest at the rate of 4.71 percent (4.71%) per annum on the balance remaining from time to time unpaid. For 72 months, beginning in December, 2006, on the last business day of each month, 1/72nd of the principal amount shall be due and payable in Minneapolis, Minnesota. Accrued interest shall be due and payable at the time each such installment is paid.

2.  If the undersigned's employment by RBC Dain is terminated, for any reason, the unpaid balance of the principal sum, plus accrued interest, shall be due and payable as of the date of the termination of employment. There shall not be any pro rata forgiveness for any mid-month termination of employment.

3.  All or any portion of unpaid principal and accrued interest may be prepaid at any time without premium or fee.

4.  The unpaid principal balance of this Note, together with all interest unpaid but accrued thereon, shall, at the option of the holder hereof, become immediately due and payable in the event the undersigned shall default in payment of any installment when due. No delay or omission on the part of the holder hereof in exercising any right or option given to such holder shall impair such right or option, or be considered as a waiver thereof or a waiver or acquiescence in any default hereunder.

5.  The undersigned hereby waives demand, presentment, protest and notice of dishonor, and agrees in case of any default (whether or not suit is brought) to pay all costs of collection, including reasonable attorneys' fees.

6.  The undersigned understands and agrees that in the event of default in any payment due hereunder, RBC Dain shall have the right, without notice, to withhold from any and all amounts payable by it to the undersigned, or on accounts held by it for the benefit of the undersigned, as compensation or otherwise, the amount of any payment or payments due hereunder, and to apply such withheld amounts to the indebtedness hereunder.

7.  This note shall be subject to, governed by and construed under the laws of the State of Minnesota.

8.  If any provision of this Note should be held invalid or unenforceable for any reason, the remainder of this agreement shall not be affected thereby.

9.  This Note and the corresponding Employment Agreement contain the entire agreement between the parties relating to payments by the undersigned to RBC Dain and cannot be varied, altered or amended, except by a written agreement executed by both parties.

Carl R. Wright

10/27/06
Date

EXHIBIT 3



| Invoice Number | Invoice Date | Gross Amount | Vendor ID | Date | Check Number |
|---|---|---|---|---|---|
| | | | 0000030130 | 10/31/2006 | 0002038048 |
| | | Discount/Amount | Withholding/Amount | Net Amount |
| 3013C/103106 | 20061031 | 202,000.00 | | | 202,000.00 |
| | | | | | |
| Totals | | 202000.00 | | | 202000.00 |

2004 - CAC

RBC
Dain Rauscher
MEMBER NYSE/SIPC

USBANK
301 Third Street Northwest
East Grand Forks MN 56721

75-1692
812

RBC Dain Rauscher Inc.

PAY ****Two Hundred Two Thousand Dollars and 00/100 Cents****

$***202,000.00

10/31/2006

VOID AFTER 90 DAYS

TO THE
ORDER
OF

WRIGHT, CARL R
BOBH
BEVERLY HILLS, CA

P.O. Box 1160
Minneapolis Minnesota 55440-1160
Phone: (612) 371 2881

0002038048

⑈00203804⑈ ⑈091215922⑈⑈15216012882⑈⑈

EXHIBIT 4

01/14/2009 13:27 FAX  8183138704          RBC WEALTH MANAGEMENT                    ☐002/004

 **RBC Wealth Management**

## LOAN AGREEMENT

$129,055                                                                January 30, 2009

1. **Parties.** The parties to this Agreement are <u>Carl R. Wright</u> ("Employee") and RBC Capital Markets Corporation ("RBC").

2. **Purpose.** RBC and Employee believe it mutually advantageous to provide for a loan by RBC to Employee. The purpose of this Agreement is to specify the terms and conditions under which the loan is to be repaid. Employee agrees that upon receipt of this loan, he/she shall repay his obligations under his/her Employment Agreement and Promissory Note dated October 27, 2006. RBC will facilitate this request by depositing $129,055 into RBC account number 306-71634 and journaling $129,055 from RBC account number 306-71634 to RBC.

3. **Forgivable Loan.** RBC shall loan Employee $129,055 pursuant to a Promissory Note dated January 30, 2009. Employee is obligated to repay that Promissory Note unless he/she continues as a Financial Consultant of RBC. Subject to that condition, as set forth in more detail below, RBC shall forgive amounts due under the Promissory Note as follows: On February 27, 2009, and on the last business day of each subsequent month as long as any amount of principal or interest is outstanding on the Promissory Note, RBC shall forgive 1/72nd of the Promissory Note and all accrued interest. Each of these dates is a "Monthly Anniversary Date." If Employee is awarded any additional back-end loans, pursuant to their Employment Agreement, following this refinancing of the original loan, the additional back-end loan(s) will have the same end-date as the refinanced loan.

4. **Condition of Continued Employment.** For each Monthly Anniversary Date, the forgiving of any debt shall take place only if Employee remains continuously employed by RBC as a Financial Consultant from the date of this Agreement through the Monthly Anniversary Date. At each Monthly Anniversary Date, if this condition is met, no notice by RBC is necessary to effect the forgiving of the debt. Employee understands and agrees that continued employment is an essential condition of forgiveness of any debt pursuant to this Agreement, because RBC will not have received full benefit of the assets held at RBC until Employee has continued to service the assets over at least the scheduled period of time.

5. **Interest.** The amount of any debt scheduled to be forgiven hereunder shall accrue interest as specified in the Promissory Note. The amount of all accrued interest at each Monthly Anniversary Date shall be forgiven at the same time as the principal amount is forgiven.

6. **Withholding.** Upon the forgiving of any amounts due under the Promissory Note, Employee shall owe RBC the amount that, in RBC's sole judgment, is necessary to satisfy federal, state and local withholding tax requirements, including income tax and FICA withholding (the "Withholding Amount"). RBC may deduct the Withholding Amount from Employee's compensation at any time from the forgiveness date forward until the full Withholding Amount is paid by Employee to RBC.

7. **Employee Benefit Plans**. Employee understands that amounts of principal and interest forgiven under this Agreement shall be disregarded for purposes of RBC's employee benefit plans, including but not limited to stock bonus plans and profit-sharing plans.

8. **Repayment Upon Termination**. Employee agrees that in the event of the termination of his/her employment with RBC as an Financial Consultant for any reason whatsoever while any amount remains outstanding on the Promissory Note, that he/she will immediately repay to RBC at RBC's office at RBC Plaza, 60 South Sixth Street, Minneapolis, MN that portion of the amount of the Promissory Note which has not been forgiven on the date of such termination.

9. **Set Off**. To secure the repayment of the loan described in this paragraph, Employee is executing and delivering to RBC the attached Promissory Note simultaneously with the execution of this Agreement. Employee further grants to RBC the right to set off against amounts owed by RBC to Employee pursuant to commissions generated or other amounts, or amounts held for the benefit of Employee by RBC against the amounts owing with respect to the Promissory Note, at or subsequent to the termination of Employee's employment at RBC.

10. **Assignment**. No right of Employee under this Agreement shall be assigned or assignable by voluntary or involuntary assignment. This Agreement may be assigned by RBC to a company acquiring, affiliated with, or controlled directly or indirectly by, RBC and will be deemed valid and enforceable without the consent of the Employee.

11. **Employment At Will**. Nothing in this Agreement shall be interpreted to indicate that the employment relationship between RBC and Employee is anything other than employment at will.

12. **Governing Law**. This Agreement shall be subject to and construed under the laws of the State of Minnesota.

IN WITNESS WHEREOF, RBC and EMPLOYEE have caused this Agreement to be executed on the date written below.

RBC CAPITAL MARKETS CORPORATION

By: _____

Its: ·   (Branch or Complex Director, Private Client Group)

_____

Carl R. Wright

Date: ___1/13/2009___

**EXHIBIT 5**

 **RBC Wealth Management**

## PROMISSORY NOTE

$129,055                                               January 30, 2009

1.  FOR VALUE RECEIVED, the undersigned promises to pay to the order of RBC Capital Markets Corporation, or its assigns or successors, ("RBC") the principal sum of $129,055 plus interest at the rate of 2.04 percent (2.04%) per annum on the balance remaining from time to time unpaid. For 72 months, beginning in February, 2009, on the last business day of each month, 1/72nd of the principal amount shall be due and payable in Minneapolis, Minnesota. Accrued interest shall be due and payable at the time each such installment is paid.

2.  If the undersigned's employment by RBC is terminated, for any reason, the unpaid balance of the principal sum, plus accrued interest, shall be due and payable as of the date of the termination of employment. There shall not be any pro rata forgiveness for any mid-month termination of employment.

3.  All or any portion of unpaid principal and accrued interest may be prepaid at any time without premium or fee.

4.  The unpaid principal balance of this Note, together with all interest unpaid but accrued thereon, shall, at the option of the holder hereof, become immediately due and payable in the event the undersigned shall default in payment of any installment when due. No delay or omission on the part of the holder hereof in exercising any right or option given to such holder shall impair such right or option, or be considered as a waiver thereof or a waiver or acquiescence in any default hereunder.

5.  The undersigned hereby waives demand, presentment, protest and notice of dishonor, and agrees in case of any default (whether or not suit is brought) to pay all costs of collection, including reasonable attorneys' fees.

6.  The undersigned understands and agrees that in the event of default in any payment due hereunder, RBC shall have the right, without notice, to withhold from any and all amounts payable by it to the undersigned, or on accounts held by it for the benefit of the undersigned, as compensation or otherwise, the amount of any payment or payments due hereunder, and to apply such withheld amounts to the indebtedness hereunder.

7.  This note shall be subject to, governed by and construed under the laws of the State of Minnesota.

8.  If any provision of this Note should be held invalid or unenforceable for any reason, the remainder of this agreement shall not be affected thereby.

9.  This Note and the corresponding Employment Agreement contain the entire agreement between the parties relating to payments by the undersigned to RBC and cannot be varied, altered or amended, except by a written agreement executed by both parties.

Carl R. Wright

1/13/2009
Date

**EXHIBIT 6**

 RBC Wealth Management

Carolyn Guy, Esq.
Vice President
Senior Associate General Counsel
RBC Plaza
60 South Sixth Street
Minneapolis, MN 55402-4422

Phone:  612-373-1733
Fax:  877-710-6937
Cell:  612-483-0084
carolyn.guy@rbc.com

February 3, 2009

<u>VIA U.S. MAIL and CERTIFIED U.S. MAIL</u>

Carl Wright
22251 ½ Erwin Street
Woodland Hills, CA 91367

Re:     Outstanding Promissory Note Balance Due
        RBC Wealth Management, a subsidiary of RBC Capital Markets Corporation
        ("RBC")

Dear Mr. Wright:

      It has come to my attention that your employment recently ended with RBC Wealth Management. I write to remind you of your obligations under the Promissory Note and Loan Agreement into which you entered on or about January 13, 2009.  Courtesy copies are enclosed for your records.

      Pursuant to the terms of Note, you have a principal balance due and owing in the amount of $129,055.44. Interest will accrue at $7.21 per diem.

      Please send payment in full ($129,055.44) to my attention at the above address immediately.  Doing so will be met with RBC's agreement not to seek interest or its fees and costs for collection.

      If I have not heard from you prior to February 18, 2008, RBC will commence arbitration proceedings for the collection of the amount owing with all accruing interest and fees and costs incurred in the collection effort in front of FINRA immediately.

Carl Wright
February 3, 2009
Page 2 of 2


This letter is written without prejudice to RBC's rights to further damages, interest and the costs of collection and on enforcement of any agreements RBC has with you.


Sincerely,

Carolyn Guy
Sr. Associate General Counsel

Enclosures

cc:    Marti Goldman (Electronically, w/ enclosures)

EXHIBIT B

LETTER TO SOPHIA KRUNIC,
FINRA DISPUTE RESOLUTION

(Dated November 17, 2009)

LAW OFFICES OF
**WILLIAM P. TORNGREN**

117 J Street, Suite 300
Sacramento, CA 95814

Telephone: (916) 554-0447
Fax:   (916) 554-6445

torngren@torngrenlaw.com
www.torngrenlaw.com

November 17, 2009

**FAX (301-527-4766) AND E-MAIL**

Sophia Krunic, Case Administrator
FINRA DISPUTE RESOLUTION
300 South Grand Avenue, Suite 900
Los Angeles, CA 90071-3135

Re:   *RBC Wealth Management v. Carl Wright*
FINRA Arbitration No. 09-04264

Dear Ms. Krunic:

We represent Carl R. Wright and a putative class of financial consultants and registered representatives in *Carl R. Wright, etc. v. RBC Capital Markets Corporation, et al.* (Sacramento Superior Court Case No. 34-2009-00064221). Today, we filed the enclosed *Class Action Complaint for Violations of the California Labor Code, Unfair Competition Law, and Declaratory Relief.* As you can see, Mr. Wright seeks monetary, injunctive, and declaratory relief for (1) himself, (2) past and present financial consultants employed in California by RBC Capital Markets Corporation, its predecessor RBC Dain Rauscher Inc., and RBC Wealth Management, and (3) the general public. The complaint seeks relief regarding so-called "promissory notes" such as the claimant attempts to enforce in the above-entitled arbitration.

In view of the pending class action, FINRA is without jurisdiction to hear the above-entitled arbitration as the issues of enforceability of the so-called "promissory note," along with other issues, will be determined by a court and on a class-wide basis.

Additionally, in view of the pending class action and FINRA's rules, any arbitrations presently pending or brought in the future by RBC Capital Markets Corporation, its predecessor RBC Dain Rauscher Inc., RBC Wealth Management, and their assignees to collect on so-called "promissory notes" from California financial consultants, registered representatives, or persons with similar duties cannot proceed without the respondent's opting out of the putative class.

If you need something further, please let us know. Thank you.

Yours very truly,

*William P. Torngren*

William P. Torngren

Enclosure as stated
cc:   Judith Norris (by U.S. Mail)
David H.S. Commins (by fax 415-391-6493)

EXHIBIT C

## LETTER FROM SOPHIA KRUNIC,
## FINRA DISPUTE RESOLUTION

(Dated December 3, 2009, and
dated stamped December 7, 2009)



Financial Industry Regulatory Authority

VIA REGULAR MAIL

December 3, 2009

Marvin Krakow, Esq.
Alexander Krako Glick LLP
401 Wilshire Blvd.
Suite 1000
Santa Monica, CA 90401

Subject:   FINRA Dispute Resolution Arbitration Number 09-04264
           RBC Wealth Management.vs. Carl Wright

Dear Mr. Krakow:

The parties have raised issues that require determination as to whether a claim is part of a class
action. Pursuant to Rule 13204(c), FINRA Dispute Resolution will refer the issue to the duly
appointed panel.

Very truly yours,

/s/ Sophia Krunic

Sophia Krunic
Case Administrator
Phone:   213-613-2680
Fax:      301-527-4766
WesternProcessingCenter@finra.org

SK2:mdo:LC53A
idr: 07/22/2008

RECIPIENTS:
     David H.S. Commins, RBC Wealth Management
     Commins & Knudsen PC, 400 Montgomery Street, Suite 200, San Francisco, CA 94104

     Marvin Krakow, Esq., Carl Wright
     Alexander Krako Glick LLP, 401 Wilshire Blvd., Suite 1000, Santa Monica, CA 90401

Investor protection. Market Integrity.        Dispute Resolution        300 South Grand Avenue        t 213 613 2680
                                              West Regional Office       Suite 900                     f 213 613 2677
                                                                         Los Angeles, CA               www.finra.org
                                                                         90071-3135

RECEIVED DEC 0 7 2009

EXHIBIT D

LETTER TO CALIFORNIA LABOR AND
WORKFORCE DEVELOPMENT AGENCY

(Dated December 2, 2009)

LAW OFFICES OF
WILLIAM P. TORNGREN

117 J Street, Suite 300
Sacramento, CA 95814

Telephone: (916) 554-6447
Fax:   (916) 554-6446

torngren@torngrenlaw.com
www.torngrenlaw.com

December 2, 2009

CERTIFIED MAIL — RETURN RECEIPT REQUESTED
NO. 7008 1140 0002 3367 0730

CALIFORNIA LABOR AND
    WORKFORCE DEVELOPMENT AGENCY
801 K Street, Suite 2101
Sacramento , California 95814

Re:   *RBC CAPITAL MARKETS CORPORATION,*
          *formerly known as RBC DAIN RAUSCHER INC.*
       *RBC DAIN RAUSCHER INC.*
       *RBC WEALTH MANAGEMENT,*
          *a division of RBC CAPITAL MARKETS CORPORATION*

Ladies and Gentlemen:

We represent a former employee of RBC Capital Markets Corporation, which is the successor to RBC Dain Rauscher Inc. They, along with the division known as RBC Wealth Management, are referred to in this letter collectively as "RBC Capital Markets." He has commenced an action against RBC Capital Markets on behalf of a class of current and former California employees and as a member of the general public. Our office in association with The Law Offices of Scot D. Bernstein, A Professional Corporation, and Alexander Krakow + Glick LLP thus represents a putative class former and current employees of RBC Capital Markets with respect to the violations set forth below.

This letter is sent on our client's behalf under the Labor Code Private Attorneys General Act of 2004. Cal. Labor Code §§ 2698 *et seq.* It constitutes our written notice pursuant to section 2699.3(a)(1) of the Labor Code. Our client, as well as members of the putative class, are "aggrieved employees" within the meaning of section 2699(c) of the Labor Code in that they were employed by RBC Capital Markets and one or more of the violations alleged below was committed against each of them.

RBC Capital Markets is in the securities and financial services business. Its workforce consists of financial consultants, along with other persons. It maintains offices throughout California, as well as in other states in the United States and internationally. RBC Capital Markets employs or has employed hundreds of financial consultants throughout California.

As an overall practice and policy, RBC Capital Markets does not reimburse financial advisors fully for monies necessarily expended as a consequence of discharging their duties as employees. Additionally, RBC Capital Markets deducts monies from its financial advisors' compensation for expenses. RBC Capital Markets also recoups bonus monies previously paid to

CALIFORNIA LABOR AND
   WORKFORCE DEVELOPMENT AGENCY
December 2, 2009
Page 2

financial advisors. The bonus monies were paid to entice financial advisors away from RBC
Capital Markets's competitors and to bring their "books" of business to RBC Capital Markets.
Alternatively, the bonuses may be viewed or characterized as RBC Capital Markets's purchase
price paid for the books of business in which case attempting to recoup the bonus is in reality an
attempt to have employees pay an employer's costs of doing business. Further, both the
documentation upon which RBC Capital Markets relies in attempting to recoup the bonuses and
the transaction itself can be viewed as requiring employees to contribute property to secure
employment.

      Financial consultants receive as compensation a percentage of the gross compensation
received by RBC Capital Markets on account of transactions or business done by their customers.
RBC Capital Markets does not pay a commission to financial advisors when the gross
compensation is less than $75.

      Generally, RBC Capital Markets pays its financial consultants once a month. The pay
statements do not contain all information required under the California Labor Code. RBC
Capital Markets requires that its financial consultants maintain their securities accounts with it
and no other broker-dealer.

      Members of the putative class and aggrieved employees allege that RBC Capital Markets
violated the California Labor Code as follows:

      1. Section 2802. RBC Capital Markets failed to reimburse its financial advisors
fully or at all for monies expended in the discharge of their duties and required its
employees to reimburse it for its business expenses and costs of doing business.

      2. Section 221. RBC Capital Markets charged and received from its financial
consultants monies for "pre-tax business expenses" and "after tax business expenses."
Those monies taken from the wages then might be repaid for certain documented
expenses. After termination, RBC Capital Markets recouped some of the monies
previously paid as bonuses to financial consultants who were enticed away from
competitors.

      3. Section 201. In view of the violations and practices and policies set forth
above, upon termination of a financial advisor, RBC Capital Markets did not pay all
wages earned and unpaid immediately or within the time provided in section 201.

      4. Section 202. In view of the violations and practices and policies set forth
above, upon resignation of a financial advisor, RBC Capital Markets did not pay all
wages earned and unpaid immediately or within the time provided in section 202.

      5. Section 203. Despite the violations set forth above, RBC Capital Markets
failed to pay the penalty of continuing wages as provided in section 203.

      6. Section 204. In view of the violations and practices and policies set forth
above, RBC Capital Markets did not pay all wages due and payable within the time
provided in section 204.

      7. Section 226(a). In view of the violations and practices and policies set forth
above, RBC Capital Markets did not provide accurate pay stubs. Additionally, the pay
stubs did not set forth the name and address of the legal entity that was the employer.

CALIFORNIA LABOR AND
WORKFORCE DEVELOPMENT AGENCY
December 2, 2009
Page 3

8.  Section 1174(d).  In view of the violations and practices and policies set forth above and its employment practices generally, any payroll records kept by RBC Capital Markets in the State of California did not show accurately the information required to be shown.

9.  Section 404(b).  In view of the violations and practices and policies set forth above, RBC Capital Markets receives property from its financial consultants as part of its contract of employment with them.  RBC Capital Markets does not return the property as provided by law.

10.  Section 450.  In view of the practices and policies set forth above, RBC Capital Markets requires its employees to patronize it in the purchase of securities brokerage service.

On November 17, 2009, we filed a complaint against RBC Capital Markets in Sacramento Superior Court alleging, among other claims, violations of Labor Code sections 201 through 204, 221, 226, 1174, and 2802, as well as the California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.*  In view of the large number of financial consultants employed by RBC Capital Markets at numerous offices throughout California, we expect to expend substantial resources and effort in pursuing the class' and aggrieved employees' claims.

Because we already filed a complaint alleging the foregoing causes of action without claims under the Labor Code Private Attorneys General Act of 2004, any action by the Labor and Workforce Development Agency will not resolve the entirety of the case.  Pursuing the matter as an integrated and cohesive whole will serve the interests of judicial economy best.

Thank you for your attention to this matter.

Yours very truly,

William P. Torngren

cc:

CERTIFIED MAIL - RETURN RECEIPT REQUESTED
No. 7008 1140 0002 3367 0747

RBC Capital Markets Corporation,
formerly known as RBC Dain Rauscher Inc.
One Liberty Plaza
165 Broadway
New York, NY 10006

CERTIFIED MAIL - RETURN RECEIPT REQUESTED
No. 7008 1140 0002 3367 0754

RBC Dain Rauscher Inc.
One Liberty Plaza
165 Broadway
New York, NY 10006

CALIFORNIA LABOR AND
   WORKFORCE DEVELOPMENT AGENCY
December 2, 2009
Page 4

cc (continued):

CERTIFIED MAIL - RETURN RECEIPT REQUESTED
No. 7008 1140 0002 3367 0761

RBC Wealth Management,
a division of RBC Capital Markets Corporation
One Liberty Plaza
165 Broadway
New York, NY 10006

EXHIBIT E

**RULE 13204 OF
FINRA CODE OF ARBITRATION
PROCEDURE**



Print

## 13204. Class Action Claims

The Industry Code applies to claims filed on or after April 16, 2007. In addition, the list selection provisions of the Industry Code apply to previously filed claims in which a list of arbitrators must be generated after April 16, 2007; in these cases, however, the claim will continue to be governed by the remaining provisions of the old Code unless all parties agree to proceed under the new code.

(a) Class action claims may not be arbitrated under the Code.

(b) Any claim that is based upon the same facts and law, and involves the same defendants as in a court-certified class action or a putative class action, or that is ordered by a court for class-wide arbitration at a forum not sponsored by a self-regulatory organization, shall not be arbitrated under the Code, unless the party bringing the claim files with FINRA one of the following:

(1) a copy of a notice filed with the court in which the class action is pending that the party will not participate in the class action or in any recovery that may result from the class action, or has withdrawn from the class according to any conditions set by the court; or

(2) a notice that the party will not participate in the class action or in any recovery that may result from the class action.

(c) The Director will refer to a panel any dispute as to whether a claim is part of a class action, unless a party asks the court hearing the class action to resolve the dispute within 10 days of receiving notice that the Director has decided to refer the dispute to a panel.

(d) A member or associated person may not enforce any arbitration agreement against a member of a certified or putative class action with respect to any claim that is the subject of the certified or putative class action until:

• The class certification is denied;

• The class is decertified;

• The member of the certified or putative class is excluded from the class by the court; or

• The member of the certified or putative class elects not to participate in the class or withdraws from the class according to conditions set by the court, if any.

This paragraph does not otherwise affect the enforceability of any rights under the Code or any other agreement.

Amended by SR-FINRA-2008-021 eff. Dec. 15, 2008.
Adopted by SR-NASD-2004-011 eff. April 16, 2007.

Selected Notice: 07-07, 08-57.

©2008 FINRA. All rights reserved.