UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

CARL WRIGHT, on behalf of
himself, all others similarly
situated, the general public,
and as an "aggrieved employee"
under the California Labor
Code Private Attorneys General
Act,

        Plaintiff,

    v.

RBC CAPITAL MARKETS
CORPORATION, a corporation
formerly doing business as RBC
DAIN RAUSCHER INC., RBC DAIN
RAUSCHER INC., RBC WEALTH
MANAGEMENT, a division of RBC
CAPITAL MARKETS CORPORATION,
and DOES 1 through 50
inclusive,

        Defendants.

NO. CIV. S-09-3601 FCD/GGH

MEMORANDUM AND ORDER

----oo0oo----

    This matter is before the court on (1) defendant RBC Capital

Markets Corporation's ("defendant" or "RBC") partial motion to

dismiss or stay plaintiff Carl Wright's ("plaintiff" or "Wright")

first amended complaint (Docket #18) and (2) plaintiff's counter-

1

motion for determination that defendants cannot pursue arbitration of class claims (Docket #25).  Plaintiff asserts five claims for relief[1] in this putative California-wide class action against RBC, plaintiff's former employer.  In defendant's motion, it asks the court to dismiss on the merits or stay pending arbitration all but one of plaintiff's claims.

More specifically, defendant moves to dismiss plaintiff's first claim for relief, alleging various pay violations of the California Labor Code, under the "first-to-file rule," on the ground that these claims are the subject of another putative California class action that has been pending in Minnesota since 2006.  Plaintiff opposes the motion, arguing the parties and claims are not substantially similar in the two actions, and thus, there is no basis for dismissal under the first-to-file rule.

Defendant moves to stay plaintiff's fourth claim for relief, seeking to declare the subject promissory notes signed by plaintiff and the class unenforceable as violative of the California Labor Code, pending a Financial Industry Regulatory Authority ("FINRA") arbitration.  Prior to plaintiff's filing of this action, defendant filed an arbitration claim with FINRA seeking to collect more than $192,000 on the promissory note

---

[1]     Plaintiff alleges claims for: (1) violation of the California Labor Code for failure to pay all wages, to provide accurate records and to reimburse business expenses (first claim for relief); (2) an injunction pursuant to Cal. Labor Code § 226 (second claim for relief); (3) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.* (third claim for relief); (4) declaratory relief (fourth claim for relief); and (5) violation of California's Private Attorneys General Act of 2004 ("PAGA"), Cal. Labor Code § 2699.3.  (First Amended Complaint ["FAC"], filed, January 6, 2010.)

plaintiff signed while employed by RBC.  Defendant asserts

plaintiff filed this class action in response to defendant's

arbitration claim in an effort to "block" RBC's pursuit of that

claim.  Plaintiff contends, by his counter-motion, that FINRA

Rule 13204 precludes the arbitration of class claims, and

defendant's arbitration claim is encompassed within the instant

class action and, thus, may not be arbitrated.  Defendant

maintains, to the contrary, that Rule 13204 only prohibits RBC

from forcing plaintiff to bring *his* putative class action in

arbitration; it does not apply to *RBC*'s individual, affirmative

claim against plaintiff, filed in advance of any class action.

As such, RBC contends plaintiff's fourth claim for relief, and

his related, derivative claims, including his second and, in

part, his third and fifth claims for relief,[2] should be stayed

pending its arbitration.[3]

---

[2]    In his second claim for relief, plaintiff seeks
injunctive relief under Cal. Labor Code § 226 for the violations
alleged in his first claim for relief.  In his third claim for
relief, plaintiff alleges a violation of the UCL based on those
same violations of the Labor Code.  In his fifth claim for
relief, plaintiff alleges he is an "aggrieved employee" under
PAGA, and that by the acts and omissions alleged in his other
claims for relief, RBC failed to comply with Cal. Labor Code
§§ 201, 202, 204, 221, 226, 404(b), 450, 1175 and 2802.

[3]    RBC does not move to dismiss or stay plaintiff's third
and fifth claims for relief to the extent they allege violations
of California Labor Code § 450, which prohibits an employer from
compelling or coercing any employee or applicant for employment
to patronize his employer, or any other person, in "the purchase
of any thing of value." (FAC, ¶s 3, 7, 19, 38.)  Plaintiff
alleges the subject promissory notes are unenforceable as they
violate Section 450 as an illegal requirement that employees
deliver property to defendants to secure employment.  RBC
indicates it will answer these claims following the court's
ruling on these motions.

1   Defendant alternatively moves to dismiss, under Federal Rule

2   of Civil Procedure 12(b)(6), plaintiff's fourth claim for relief,

3   and the related derivative claims, arguing the claims fail, as a

4   matter of law, because even on a motion to dismiss, the court

5   should not accept as true allegations that are contradicted by

6   unambiguous language in the subject documents; namely, the

7   Promissory Notes and related Loan Agreements.  Those documents,

8   defendant contends, fully comply with California law.

9   The court heard oral argument on the motions on June 4,

10   2010.  By this order, it now renders its decision on the motions.

11   Ultimately, the court does not reach defendant's alternative Rule

12   12(b)(6) argument because for the reasons set forth below, it

13   finds that plaintiff's fourth claim for relief and related

14   derivative claims should be stayed pending the FINRA arbitration.

15   The court also finds in defendant's favor as to plaintiff's first

16   claim for relief; said claim is properly dismissed under the

17   first-to-file rule.

18   **BACKGROUND**

19   RBC is a registered broker dealer in the United States and

20   holds itself out as providing investment banking and investment

21   services to high-net-worth individuals.  RBC maintains that as is

22   customary within the financial services industry, in order to

23   help a financial consultant transition to a new firm and as a

24   recruitment inducement, the consultant often receives a loan by

25   the new employer that is secured by a promissory note.

26   Typically, those loans are forgiven during the course of a

27   consultant's employment but become immediately due and payable in

28   any remaining amount, in the event the employee leaves, for any

4

1  reason, before the maturity date of the note.

2      In this case, on October 27, 2006, plaintiff, a financial
3  consultant, and RBC entered into an Employment Agreement,
4  pursuant to which RBC provided plaintiff a forgivable loan in the
5  amount of $202,000.  (RBC's RJN [Docket #19], filed January 29,
6  2010, Ex. D.)  Also on October 27, 2006, plaintiff executed a
7  Promissory Note.  The Note was for $202,000, was payable over six
8  years, and had an interest rate of 4.71 percent per annum.
9  Pursuant to the Employment Agreement, 1/72 of the principal and
10 interest was to be forgiven each month over six years.  The Note
11 also provided that plaintiff shall repay any unpaid balance of
12 the principal sum plus accrued interest in full, if his
13 employment by RBC terminated for any reason, with the amount
14 coming due as of the date of termination.  (Id. at Ex. D., ¶ 2.)

15     On October 31, 2006, plaintiff received a check from RBC for
16 $202,000.  (Id. at Ex. I at Ex. A at Ex. 3.)  Each month for 26
17 months between the end of December 2006 and the end of January
18 2009, 1/72 of the principal and interest ($2,806 per month) was
19 forgiven on plaintiff's Note balance.  By the end of January
20 2009, the balance was $129,056.  (Id. at Ex. I at Ex. A, p. 2.)

21     On January 13, 2009, RBC offered plaintiff an opportunity to
22 refinance his Note at a lower interest rate.  He accepted, and on
23 January 13, 2009, he entered a second Loan Agreement with RBC.
24 (Id. at Ex. E.)  Under the second Loan Agreement, RBC agreed to
25 loan plaintiff $129,055 pursuant to a new Promissory Note, which
26 plaintiff also executed on January 13, 2009.  (Id. at Ex. F.)  By
27 the Note, plaintiff again promised to repay the unpaid portion of
28 the loan plus accrued interest in full, if his employment with

1  RBC terminated for any reason, with the amount coming due as of
2  the date of his termination.  (Id. at Ex. F, ¶ 2.)

3       Effective January 30, 2009, plaintiff's employment with RBC
4  terminated.  (Id. at Exs. A, I.)  RBC contends that pursuant to
5  the above-described 2009 agreements, the unforgiven portion of
6  the Note became immediately due.  (Id. at Exs. E, F.)  The
7  principle amount remaining on the Note as of plaintiff's
8  termination date was $129,055.44.  Interest is accumulating at a
9  rate of 2.04% per annum since the date of the termination.

10      RBC made a demand upon plaintiff for payment of the default
11  amount by letter of February 3, 2009.  To date, no payment has
12  been made.

13      On July 13, 2009, RBC filed a Statement of Claim before
14  FINRA, alleging that plaintiff breached his contractual
15  obligations to RBC.  (Id. at Ex. I at Ex. A.)  RBC demanded
16  plaintiff repay the $129,055.44 plus interest that he owed on the
17  2009 Promissory Note.  (Id.)

18      Four months later, on November 17, 2009, plaintiff filed a
19  class action complaint in the Sacramento County Superior Court,
20  which RBC timely removed to this court.  Plaintiff thereafter
21  filed a first amended complaint.  (Docket #s 1, 2, 14.)  By this
22  action, plaintiff seeks a declaration that his and the class'
23  "bonuses" paid by defendants were earned upon delivery of their
24  "books" of business to defendants and that any so-called
25  "promissory notes" executed in connection with the bonuses are
26  void and unenforceable.  (FAC ¶ 5.)  He pleads five alternative
27  theories challenging the Notes' enforceability, four of which are
28  based on the California Labor Code.  (Id. ¶s 59-68 [¶s 61, 63,

                                    6

asserting that in violation of Cal. Labor Code § 221 defendants seek to collect on "bonuses" previously earned by plaintiffs since the subject monies do not represent loans from defendants but bonuses earned by plaintiffs for moving customers, plaintiffs' "books of business," to RBC]; [¶ 64, alleging the purported loan structure violates Cal. Labor Code § 2802 because it requires plaintiffs to pay RBC's business expenses]; [¶ 65, asserting the purported "loans" violate Cal. Labor Code § 402 by requiring plaintiffs to contribute property, in the form of a book of business, to secure employment].)  Plaintiff's final theory challenging the enforceability of the promissory notes asserts that defendants engaged in unfair business practices designed to make continued employment with defendants "economically unfeasible" in an effort to "squeeze smaller producers out of the firm," while simultaneously accelerating payment on the notes and keeping the transferred books of business.  (Id. at ¶ 62.)

     Plaintiff seeks to represent a class of "past and present employees of [RBC] with the State of California who also signed so-called 'promissory notes' or similar agreements in connection with receiving 'bonuses' for moving from a competitor to defendants and/or delivering all or part of their 'books' of business to defendants."  (FAC ¶ 16.)

     The same day he filed his complaint, plaintiff wrote to FINRA asserting the class action complaint divested FINRA of jurisdiction to hear RBC's arbitration claim.  (Def.s' RJN at Ex. I at Ex. B.)  On December 3, 2009, FINRA advised the parties that the question of whether RBC's earlier filed note collection

7

1  action was precluded by plaintiff's later filed class action
2  complaint would be referred to an arbitration panel. (Id. at Ex.
3  I at Ex. C.)

4      On December 15, 2009, plaintiff filed in superior court a
5  "Motion for Determination that Defendants Cannot Pursue
6  Arbitration of Class Claims," requesting an order that his filing
7  of the class action against RBC divested FINRA of its authority
8  to arbitrate RBC's claim and further barred RBC from enforcing
9  promissory note agreements against any putative class member.
10 Plaintiff informed FINRA of its motion. (Id. at Ex. G.)
11 Thereafter, FINRA responded that RBC's arbitration "will be held
12 in abeyance until the issue is resolved by the court." (Id. at
13 Ex. K.)

14     After removing the instant action to this court, on January
15 29, 2010, RBC filed its partial motion to dismiss or stay
16 plaintiff's first amended complaint. On March 10, 2010,
17 plaintiff filed its counter-motion seeking to preclude
18 arbitration.

19                          **ANALYSIS**

20 A.   **Standing**

21     Preliminarily, the court addresses plaintiff's standing
22 argument. Plaintiff asserts RBC's motion must fail because
23 though RBC is a named defendant in this action, it is not a party
24 to the Minnesota litigation, In re RBC Dain Rauscher Overtime
25 Litigation, Civ. No. 06-3093 (JRT/FLN) (United States District
26 Court for the District of Minnesota) (hereinafter "Minnesota
27 action") or the FINRA arbitration action. Plaintiff contends
28 that the parties to those actions are "RBC Dain Rauscher Inc."

and "RBC Wealth Management," two entities RBC maintains, in the instant motions, are "non-existent."

Plaintiff's argument is unavailing.  First, RBC is a party to the Minnesota action.  See In re RBC Dain Rauscher Overtime Litigation, No. 06-3093 (JRT/FLN), 2010 WL 1324938, *1 (D. Minn. March 31, 2010) ("Plaintiffs . . . brought this . . . action against their employer *RBC Capital Markets Corporation* [RBC]. . .") (emphasis added).  Second, RBC is also a party in the FINRA arbitration.  (Def.'s RJN, Ex. I at Ex. 3 [Statement of Claim is captioned "RBC Wealth Management, *A Division of RBC Capital Markets Corporation* [RBC]," Claimant v. Carl Wright, Respondent."].) (emphasis added).

Moreover, RBC did not assert in its papers that RBC Dain Rauscher Inc. and RBC Wealth Management are "non-existent" but rather that they "are not currently existing legal entities." (Docket #18 at 2 n. 2.)  RBC was formerly known as RBC Dain Rauscher, Inc., and thus, RBC Dain Rauscher Inc. is now RBC Capital Markets Corporation (referred to as "RBC" herein), not a separate legal entity.  Similarly, RBC Wealth Management, as alleged before FINRA, is a "division" of the legal entity known as RBC, not a separately existing legal entity.  (Def.'s RJN at Ex. I at Ex. 3.)  Plaintiff's attempt to conjure certain legal consequences from these name changes is a diversion from the merits of RBC's motion.  There is no basis to deny RBC's motion on grounds of a lack of standing.

### B.  **First-to-File Rule**

Defendant moves to dismiss plaintiff's first claim for relief, alleging violation of the California Labor Code for

9

failure to pay proper wages, provide accurate records, and
reimburse business expenses, under the first-to-file rule. "When
cases involving the same parties and issues have been filed in
two different districts," the first-to-file rule grants "the
second district court [the] discretion to transfer, stay, or
dismiss the second case in the interest of efficiency and
judicial economy." See Ranch, Inc. v. Sunrise Commodities, Inc.,
No. C 09-02674 MHP, 2009 U.S. Dist. LEXIS 79170, *12 (N.D. Cal.
Sept. 3, 2009). The rule derives from principles of federal
comity. Cedars-Sinai Med. Ctr. v. Shalala, 125 F.3d 765, 769
(9th Cir. 1997). Its purpose is to "to avoid placing an
unnecessary burden on the federal judiciary, and to avoid the
embarrassment of conflicting judgments." Church of Scientology
of Cal. v. U.S. Dep't of the Army, 611 F.2d 738, 750 (9th Cir.
1979).

An action is duplicative of a parallel action filed in
another court, "if the claims, parties, and available relief do
not significantly differ between the two actions." Serlin v.
Arthur Andersen & Co., 3 F.3d 221, 223 (7th Cir. 1993). Where
duplicative actions are filed in courts of concurrent
jurisdiction, the court which first acquired jurisdiction
generally should proceed with the litigation. Pacesetter Sys.,
Inc. v. Medtronic, Inc., 678 F.2d 93, 95 (9th Cir. 1992).
However, the first-to-file rule is not a "rigid or inflexible
rule to be mechanically applied, but rather is to be applied with
a view to the dictates of sound judicial administration." Id.
The United State Supreme Court has explicitly noted that "[w]ise
judicial administration, giving regard to conservation of

10

judicial resources and comprehensive disposition of litigation, does not counsel rigid mechanical solutions" to the problems of duplicative litigation and the relevant factors are equitable in nature.  <u>Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.</u>, 342 U.S. 180, 183 (1952).

When applying the first-to-file rule, courts look to three essential factors: (1) the chronology of the two actions; (2) the similarity of the parties; and (3) the similarity of the issues. <u>L. Cohen Grp. v. Herman Miller, Inc.</u>, No. C 05-4476 SI, 2006 U.S. Dist. LEXIS 2301, *5-6 (N.D. Cal. Jan. 19, 2006).  With respect to both the parties and the issues, courts routinely recognize that they need not be identical in the two actions.  Substantial similarity is sufficient.  <u>Biotronik, Inc. v. Guidant Sales Grp.</u>, No. 09-443-KI, 2009 U.S. Dist. LEXIS 52635, *5-6 (D. Or. June 22, 2009) (holding "[t]he parties . . . need not be exactly identical; there may be additional parties . . . ); <u>Walker v. Progressive Casualty Ins. Co.</u>, C 03656 R, 2003 U.S. Dist. LEXIS 7871, *7-8 (W.D. Wash. May 9, 2003) (recognizing that "[s]light differences in the claims asserted do not prevent application of the rule where the underlying complained-of conduct is almost identical.").

Here, the parties do not dispute that the Minnesota action was filed first.  Indeed, that action has been pending since 2006; this action was not filed until November 17, 2009. In 2006 and 2007, two other California district courts transferred cases, alleging essentially the same claims as plaintiff raises here, to Minnesota based on the first-to-file rule.  (RBC's RJN, Exs. O, P.)  In the Minnesota action, on June

26, 2009, following extensive discovery, RBC filed motions for summary judgment as to each of the plaintiffs' individual claims (including the California plaintiffs), and on July 31, 2009, the plaintiffs filed a motion to certify the California state-wide class (as well as other sub-classes).   As of December 21, 2009, the matters were fully briefed and argued to the court, and on March 31, 2010, the Minnesota court rendered its decision on the motions.   In re RBC Dain Rauscher Overtime Litigation, Civ. No. 06-3093 (JRT/FLN), 2010 WL 1324938 (D. Minn. March 31, 2010).   In light of the advanced stage of the Minnesota action, dismissal, rather than transfer, is most appropriate in this case, provided the court finds the two actions substantially similar.   See Ranch, Inc., 2009 U.S. Dist. LEXIS 79170 at *12.

With regard to the parties, as set forth above, RBC is a defendant in both actions.   While plaintiff Wright is not a named plaintiff in the Minnesota action, the plaintiffs there seek to represent a class of persons of which Wright and the class he seeks to represent in this action are members.   In his first claim for relief in this case, Wright alleges that RBC violated "numerous provisions of the Labor Code" by various pay violations.   (FAC ¶¶ 39-47.)   As to these claims, Wright seeks to represent a putative class of:

> past and present employees of [RBC] within the State of California at any time beginning four years prior to the filing of this complaint and up to the time class certification is granted who (1) were "financial consultants," registered representatives, or account executives, or were employed in similar positions with similar job duties or responsibilities and (2) were (a) denied payment of all compensation due and/or (b) denied accurate itemized statements as required by section 226 of the Labor Code and/or (c) denied full indemnification for

all expenditures incurred in the course of their employment or at [RBC's] direction . . . (FAC ¶ 15.)

More specifically, Wright alleges that RBC violated California Labor Code: (1) Sections 201 and 202 by failing to pay each former employee all compensation due immediately upon termination or within 72 hours of a voluntary termination without notice, for which plaintiff seeks Section 203 waiting time penalties (FAC ¶ 45); (2) Sections 201, 202, and 204 by failing to pay all compensation due, and failing to pay within statutory timeframes (FAC ¶ 41); (3) Section 221 by deducting charges for "pre-tax business expenses" and "after-tax business expenses" from pay (FAC ¶ 42); (4) Sections 226, 226(a) and 1174 by failing to keep and provide accurate, written itemized statements providing the information required by law, and failing to provide plaintiff and class members with accurate information at the end of each pay period (FAC ¶¶ 46); and (5) Section 2802 by failing to reimburse or indemnify employees fully for various monies expended for the benefit of and at the direction of RBC (FAC ¶ 44).

*Each* of these claims is at issue in the Minnesota action, where four former California RBC employees seek to represent a California sub-class of:

> All current and former Securities Brokers [defined as "individuals who sold and/or marketed . . . ('Financial Products') on behalf of [RBC], including but not limited to employees with any of the following job titles: . . Financial Consultant . . ."] within the State of California, who are or were employed by [RBC] at any time from July 27, 2002 to the present, to recover unpaid overtime compensation and other wages due pursuant to the California Labor Code §§ 203, 204, 221, 226(a), . . . , 2802; . . . and the California Business and Professions Code § 17200 et seq. ("California Subclass").

13

(RBC's RJN, Ex. L.)[4]

Contrary to Wright's protestations, it not relevant to the inquiry that the Minnesota court ultimately denied certification of the California class. In re RBC Dain Rauscher Overtime Litigation, 2010 WL 1324938 at *57 (finding that individual issues predominated over any questions of law or fact that are common to the class). What is relevant to the application of the first-to-file rule is that the Minnesota action was filed and remains pled as a putative California class action on behalf of the very same class of California RBC employees that plaintiff seeks to represent here on the same core issues at stake in the Minnesota action.

It is also not determinative that the two cases involve some distinct issues on behalf of different parties. Plaintiff emphasizes that only this action pleads a PAGA claim on behalf of statutorily-defined "aggrieved employees," and that the Minnesota action bases several of the Labor Code violations on the allegation that RBC illegally required employees to bear all

---

[4]   See generally In re RBC Dain Rauscher Overtime Litigation, 2010 WL 1324938 at *5 (summarizing California plaintiffs' Labor Code claims); Id. at *39 (describing California plaintiffs' Section 221 claim for unlawfully making deductions from employees' wages for the purposes of shifting the employer's costs of doing business to employees); Id. at *41 (describing California plaintiffs' Section 2801 claim for failure to reimburse employees for all business expenditures incurred); Id. at *42-43 (describing California plaintiffs' Section 201 claim for the willful and intentional failure to pay employees all wages due by the applicable deadlines and for waiting time penalties as a result thereof); Id. at *44 (describing California plaintiffs' Section 204 claim for failure to pay employees twice during each calendar month); Id. at *45 (describing California plaintiffs' Section 226 claim for a failure to provide employees with accurate and detailed records of hours worked and wages earned).

14

losses sustained from reversed trades (a matter not at issue in this case).  However, as set forth above, courts do not require identical parties or claims to apply the first-to-file rule; rather, only substantial similarity is required.  That standard is easily met here.  (<u>See</u> RBC's Reply [Docket #35], at 4 [chart depicting cross-over of claims].); fn. 4 <u>supra</u>; <u>In re RBC Dain Rauscher Overtime Litigation</u>, 2010 WL 1324938 at *5 (summarizing California plaintiffs' claims); <u>Mauro v. Fed. Express Corp.</u>, No. CV 08-8526 DSF(PJWx), 2009 U.S. Dist. LEXIS 59954, *10 (C.D. Cal. June 18, 2009) (dismissing action as duplicative of prior action, as "the two actions share a common transactional nucleus of facts").

Here, sound judicial administration requires dismissal of plaintiff's claims which have been raised and litigated in the Minnesota action.  It would be a misuse of this court's and the parties' resources to re-litigate these claims when they involve the same evidence, damages and putative class as in the Minnesota action.  That matter has progressed through extensive discovery and class certification and summary judgment briefing.  A decision on the merits of these motions has been rendered.  In the interests of federal comity and the conservation of judicial resources, the court finds dismissal of plaintiff's first claim for relief is warranted under the first-to-file rule, as parallel litigation is pending in Minnesota.[5]

---

[5]     RBC argues plaintiff should be denied leave to amend his complaint to allege this claim for relief on an individual basis, arguing plaintiff's individual claims arising from his employment with RBC are subject to mandatory binding arbitration before FINRA, and thus, amendment would be futile.  The court does not consider this issue as plaintiff does not request leave

1    **C.    FINRA Arbitration**[6]

2        Plaintiff's fourth claim for relief seeks a judicial

3    declaration that the promissory notes, he and the class executed,

4    are unenforceable.  (FAC ¶ 59-68.)  Defendant argues this claim,

5    and plaintiff's related derivative claims, should be stayed

6    pending RBC's arbitration seeking to enforce plaintiff's 2009

7    Promissory Note.  By his counter-motion, plaintiff contends a

8    stay is not mandated because the filing of this action divested

9    FINRA of jurisdiction over RBC's arbitration claim pursuant to

10   FINRA Rule 13204.[7]

11       In deciding this issue, the court must consider that FINRA

12   Rules "constitute[] an 'agreement in writing' under the Federal

13

14   _____

     to amend.

15

16       [6]    FINRA has stayed the arbitration pending this court's
     decision.  Pursuant to FINRA Rule 13204, this court has authority
17   to determine whether RBC's arbitration claim against plaintiff is
     "part of" plaintiff's putative class action.  FINRA Rule 13204(c)
18   (providing "The Director will refer to a panel any dispute as to
     whether a claim is part of a class action, unless a party asks
19   the court hearing the class action to resolve the dispute within
     10 days of receiving notice that the Director has decided to
20   refer the dispute to a panel.").  That, however, is the extent of
     this court's inquiry.  Contrary to plaintiff's argument, Rule
21   13204(c) does not permit this court to order that FINRA may not
     arbitrate RBC's claim or to order that RBC cannot arbitrate any
22   class claims.  Those are matters for the FINRA arbitration panel
     to decide.  See Green Tree Financial Corp. v. Bazzle, 539 U.S.
23   444, 452 (2003) (determination of whether individual claims are
     procedurally "eligible" for arbitration is a question for the
     arbitrator, not the court).
24
25       [7]    Plaintiff does not dispute that pursuant to the "Form
     U-4" he signed to work for RBC, a broker dealer, he agreed to
26   arbitrate "any dispute, claim, or controversy that may arise
     between [him] and [his] firm, or a customer, or any other person,
27   that is required to be arbitrated under the rules, constitutions,
     or by-laws of [FINRA] . . . ."  (Docket # 34 at 3.)  He only
28   asserts that pursuant to FINRA rules excluding certain claims
     from arbitration, RBC's claim may not be arbitrated.  (Id. at 3-
     5.)

Arbitration Act ["FAA"], and that the FAA manifests a 'liberal federal policy favoring arbitration agreements." Liberte Capital Group, LLC v. Capwill, 148 Fed. Appx. 413, 416 (6th Cir. 2005). As such, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. Id. (citing Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983)).

However, FINRA Rule 13204 specifically excludes class actions from FINRA arbitration. Simply stated, the Rule provides that any claim based upon the same facts and law and involving the same defendants as a class action "shall not be arbitrated" under FINRA's rules. FINRA Rule 13204(b). The predecessor to Rule 13204, National Association of Securities Dealers, Inc.'s ("NASD") Rule 10301(d)(2) was originally adopted due to NASD's concern with protecting investor access to the courts in bringing class action claims. 57 Fed. Reg. 52659 (Oct. 28, 1992); 59 Fed. Reg. 22032 (Apr. 20, 1994). While the Rule has since been extended to include employment claims, the motivating principle has remained to prevent firms from using an arbitration agreement to compel a customer/employee to arbitrate his claims against the firm that are already encompassed by a class action. See D.E. Frey & Co., Inc. v. Wherry, 27 F. Supp. 2d 950, 951 (S.D. Tex. 1998). The Rule was thus designed to prevent a defendant in a class action, after the action is filed, from trying to force a putative class member to arbitrate his claim in arbitration, as a means of frustrating his choice to remain a class member and litigate in court. Id. ("[T]he rule armed investors with a means to object to an attempt to compel arbitration when they would

rather pursue class action litigation in court.")  As the Sixth
Circuit has noted, the Rule's plain meaning is that any putative
class member's claim is ineligible for arbitration if that claim
is "comprehensively included within the claims already asserted
by the class."  See Liberte, 148 Fed. Appx. at 417 (interpreting
the NASD predecessor Rule 13204).

     RBC contends that, in contrast, where arbitration claims
such as RBC's are not filed in response to a previously filed
class action and are "not comprehensively included within the
claims asserted by the class," they are "not ineligible for
arbitration" under the Rule.  Id. at 417.  Relevant to this
action, Rule 13204 states in part:

>           (b)  Any claim that is based upon the same facts and law,
>                and involves the same defendants as in a . . .
>                putative class action . . . shall not be arbitrated
>                . . .
>
>           (d)  A member or associated person may not enforce any
>                arbitration agreement against a member of a . . .
>                putative class action with respect to any claim that
>                is the subject of the certified or putative class
>                action . . .

FINRA Rule 13204 (Torngren Decl, filed Mar. 10, 2010 [Docket
#27], Ex. E.).

     As to subpart (b), FINRA established three criteria, all of
which must be satisfied for plaintiff to preclude the arbitration
of RBC's claim: (1) RBC's arbitration claim must be based on the
*same facts* as plaintiff's putative class action; (2) RBC's
arbitration claim must be based on the *same law* as plaintiff's
class action; and (3) RBC's arbitration claim must involve the
*same defendants* as plaintiff's putative class action.  And, as to
subpart (d), plaintiff must show that RBC sought, by filing its

claim against him, to enforce an arbitration agreement with respect to a claim that was *then the subject* of (not "later became the subject of") a putative class action.

Here, with respect to subpart (b), plaintiff cannot establish the first element because RBC's arbitration claim and plaintiff's claims in the putative class action are not based on the same facts.  RBC's arbitration claim is based on plaintiff's default on a loan extended to him in January 2009, after more than two years of employment with RBC.  The gravamen of plaintiff's putative class action, on the other hand, is based on the contention that he and other financial consultants were induced, at the time of hire, to provide a "book of business" to RBC in exchange for a "bonus" that RBC then sought to recover in violation of California law.  (FAC ¶ 60-65.)  The factual bases for the two claims are different.

Nor is RBC's arbitration claim against plaintiff based on the same law as plaintiff's putative class action.  FINRA Rule 13806 allows for the expedited handling of promissory note claims (claims in which an "associated person failed to pay money owed on a promissory note") before a single arbitrator and with simplified discovery procedures, because FINRA considers promissory note claims to "involve straightforward contracts with few documents being entered into evidence."  FINRA Rule 13806; SEC Regulatory Notice 09-48, Promissory Note Proceedings (August 2009).  RBC's arbitration claim is such a contract claim. By contrast, plaintiff's putative class action is based on multiple sections of the California Labor Code.  Thus, the two claims are not based on the same law.

Indeed, to find the requisite similarity, courts require more than a simple overlap of some factual or legal issues, as urged by plaintiff.  Even in cases where all the claims sought to determine wage and hour related violations, courts have found legal dissimilarities, ordering some claims arbitrated and others stayed.  See e.g. Kozma v. Hunter Scott Financial, L.L.C., No. 09-80502, 2010 U.S. Dist. LEXIS 16746, *7-9 (S.D. Fla. Feb. 25, 2010) (holding that the plaintiff's Fair Labor Standards Act claim for overtime wages was an individual claim and subject to FINRA arbitration despite pending, putative class action claims seeking wages under state law); Coheleach v. Bear, Stearns & Co., Inc., 440 F. Supp. 2d 338, 340-41 (S.D.N.Y. 2006) (accord) (granting the defendant's motion to compel arbitration of FLSA claim and staying the plaintiff's class action claims pending outcome of NASD arbitration).  Here, there is even greater dissimilarity in the applicable law.

Finally, Rule 13204(b) requires that the claim sought to be arbitrated be against the same defendants as the putative class action.  Here, the "defendant" in RBC's arbitration claim is plaintiff Wright.  In the putative class action, the defendant is RBC.  The distinction is significant.  Rule 13204 does not apply to matters involving merely the same "parties."  Rather it specifically requires that the defendants be the same in both actions.  Dougherty-Fenn v. Raymond James & Assoc., No. 8:08-cv-1131-T-30TGW, 2008 U.S. Dist. LEXIS 75256, *2-3 (M.D. Fla. July 15, 2008) (Rule 13204 not applicable where individual claims were not the same as the pending class claims; they were highly individualized and against different defendants).

1   Plaintiff's reliance on FINRA Rule 13204(d) is likewise
2   unavailing.  It too does not apply to these facts.  The Rule, by
3   its express terms, contemplates that a class action has already
4   been filed at the time the member seeks to enforce an arbitration
5   agreement.  Subsection (d) of the Rule provides that a member may
6   not enforce an arbitration agreement "against *a member* of a
7   certified or putative class action with respect to any claim that
8   *is* the subject of *the* certified or putative class action until .
9   . . ."  FINRA Rule 13204(d).  Thus, the Rule applies only to
10  those who have already initiated a class action or who are
11  already members of class actions that have been initiated.

12   Here, RBC did not seek to force into arbitration a claim
13  that was already the subject of an existing putative class
14  action.  In fact, no putative class action existed when RBC filed
15  its arbitration claim in July 2009.  Plaintiff filed the instant
16  litigation *four months later* in November 2009.  By its
17  arbitration claim, RBC seeks only to have its own claim
18  arbitrated, which is distinct from and not the same as any claim
19  that plaintiff now asserts in this court.  Plaintiff cannot turn
20  the Rule on its head by *later* filing a putative class action to
21  block RBC's note collection claim previously filed with FINRA.[8]

22
23
24   [8]   Moreover, the exceptions to Rule 13204(d) further
     demonstrate that the Rule was never intended to preclude another
25  party's arbitration claim, but rather, its purpose is to allow a
     claimant to choose to pursue *his own* claim either in a class
26  action in court or in arbitration.  The Rule's exceptions provide
     that a member may not enforce an arbitration agreement against a
27  member of a class action with respect to a claim that is the
     subject of the class action *until* the member is excluded from the
28  class or otherwise elects not to participate in the class.  FINRA
     Rule 13204(d).

Plaintiff cites no authority in support of his contrary position.  And, in the only case where a similar argument was made, the court dismissed claims essentially identical to plaintiff's claims here.  <u>Banus v. Citigroup Global Markets, Inc.</u>, No. 09 Civ. 7128 (LAK), 2010 WL 1643780, *5-6 (S.D.N.Y. April 23, 2010).  In <u>Banus</u>, the court found that the plaintiffs, there, had:

> brought [a] baseless lawsuit in what quite plainly was a studied effort to prevent collection of the debts they owed through the arbitration process.  As the lawsuit is completely without merit, it amounted to an attempt to use the judicial process for the quite improper purpose of simply stalling [defendant's] effort [in the arbitration] to collect the money it is owed.

In <u>Banus</u>, the court held the financial firm's individual debt collection action before FINRA was not barred by Rule 13204, as it was not based on the same facts and law, did not involve the same defendants (only the same parties), and was filed before the putative class action was filed.  <u>Id.</u>  These facts, the court found, rendered transparent the plaintiffs' attempt to use Rule 13204 to thwart or delay the FINRA arbitration.  <u>See id.</u>[9]

Similarly here, plaintiff seeks to use Rule 13204 to block RBC's pursuit before FINRA of individual relief against plaintiff by later filing in court a putative class action seeking declaratory relief.  In other words, plaintiff has taken his defenses to RBC's individual debt collection arbitration claim and asserted them as a basis for declaratory relief before this court, then pled them on behalf of a putative class so that he

---

[9]   Without discussing the case, plaintiff simply states <u>Banus</u> is "incorrectly decided."

may invoke FINRA Rule 13204 and shield himself from RBC's attempt to collect in arbitration the unearned balance of his promissory note.  As recognized by the court in <u>Banus</u>, such misuse of Rule 13204 cannot be condoned.

<u>Old Discount Corp. v. Hubbard</u>, 4 F. Supp. 2d 1268 (D. Kas. 1998), on which plaintiff heavily relies, is inapposite.  There, the court precluded the financial firm from compelling the plaintiff to arbitrate *his own* race discrimination claims in a NASD arbitration, since the plaintiff had chosen to pursue the very same claims in court as part of a class action lawsuit. Thus, <u>Hubbard</u> represents a correct application of Rule 13204 but the factual circumstances are different than this case.  As set forth above, RBC does not seek to force plaintiff to arbitrate *his* class claims in the arbitration.  It seeks only to litigate *its* individual, contractual claim against plaintiff. Accordingly, the intended purpose of Rule 13204 is not implicated here, as RBC does not seek to force plaintiff to bring his claims in arbitration, in order to prevent him from pursuing a class action or defeat class certification or participation.

FINRA is the forum the parties chose to litigate enforceability of promissory notes, and it is a forum set up by FINRA to efficiently and promptly resolve such individual claims. "[T]he mere presence of a suit of . . . non-arbitrable claims . . . will not defeat enforcement under the [FAA] . . . regarding those claims that are arbitrable." <u>See</u> <u>Cannon v. GunnAllen Financial, Inc.</u>, Case No. 06-0804, 2007 WL 189601 (M.D. Tenn. Jan. 22, 2007) (compelling to arbitration non-class claims alleged alongside class claims).  As RBC aptly notes, plaintiff

1  seeks to use Rule 13204 "as a sword," when it was intended only

2  "as a shield" to protect a class member from being compelled to

3  arbitrate class claims.

4      Given the liberal policy in favor of arbitration, the court

5  finds that RBC's claim before FINRA should proceed, while

6  plaintiff's class claims are stayed.  Furthermore, judicial

7  economy militates in favor of staying plaintiff's claim for

8  declaratory relief, as the outcome of the FINRA

9  proceeding could well impact plaintiff's claims in this action.

10  Allowing the two matters to proceed concurrently would

11  unnecessarily risk inconsistent judgments and defeat efficiency.

12  **CONCLUSION**

13      For the foregoing reasons, defendant's partial motion to

14  dismiss and/or stay plaintiff's first amended complaint is

15  GRANTED in its entirety.  Plaintiff's first claim for relief is

16  hereby dismissed pursuant to the first-to-file rule.  Plaintiff's

17  fourth claim for relief, and the related derivative claims

18  thereof, are stayed pending resolution of defendant's FINRA

19  arbitration claim.

20      Defendant shall file its answer to the remaining claims for

21  relief plead in the first amended complaint on or before 20 days

22  from the date of this Order.  The parties shall file a joint

23  pretrial scheduling conference statement within 30 days of the

24  ///

25  ///

26  ///

27  ///

28  ///

1  date of this Order.

2       IT IS SO ORDERED.

3  DATED: June 24, 2010

4                                    _____
5                                    FRANK C. DAMRELL, JR.
                                     UNITED STATES DISTRICT JUDGE

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28